## TICKNOR *vs.* HARRIS & a.

The clauses of the statute of July 2, 1822, providing that the estate of every person dying testate or intestate shall stand chargeable with the payment of his debts, assert a general principle, which is to be made effectual by the force of other provisions of the law providing the mode of enforcing the remedy.

If an estate administered in the insolvent course proves to be in fact solvent, the proceedings are, nevertheless, valid and binding.

By the common law, the executors could not sell the lands for the payment of debts, unless expressly charged.

When the ancestor bound himself and his heirs in an obligation under seal, the obligee might sue the heir or executor, and have execution of the land descended to the heir. But if the heir aliened before action brought, or the ancestor devised the land, the creditor was without remedy against the heir or devisee.

To remedy this, the statute of 4 Wm. & Mary, ch. 14, gave a remedy in an *action* of *debt* to creditors *by bond* or *other specialty*, against the heir and devisee jointly.

This remedy is extended to all creditors here, by the 3d section of the Colonial Act of 5 Geo. II., for the more easy recovery of debts in His Majesty's plantations in America, which makes houses, lands, negroes and other hereditaments chargeable with all just debts, in like manner as real estates are by the laws of England liable to the satisfaction of debts due by specialty.

This statute, made for the colonies, having been used and practised on, was adopted by our constitution, and may be considered part of our common law.

By the operation of this statute, and by a proviso in the seventh section of the

Ticknor *v.* Harris.

Act of July 2, 1822, for the settlement of insolvent estates, any creditor of an estate administered in the insolvent course, whose demand depended on a contingency, so that it could not be allowed by the commissioners, has a remedy against the heir and devisee.

But an action at law will not lie against the legatees of such estate, notwithstanding the terms, devisees and legatees, are sometimes used as synonymous in the statutes; because the proviso of the statute relative to insolvent estates gives no new remedies in this respect, and creditors had no right of action against legatees before the passage of that act.

There is no provision of the common law, or by any English statute, before the Revolution, or by our statutes, for an action by a creditor of an estate against a legatee.

Legacies are made subject to the payment of debts, through the executor or administrator, by his retaining the assets until the debts are paid, or recalling sufficient for the purpose.

Under the statutes of this State, regulating the settlement of insolvent estates, the executor or administrator of an estate so administered cannot retain or recall the assets for the payment of contingent demands which could not be allowed by the commissioner, as he is not bound to pay them. The statute enacts that no action shall be sustained against the executor or administrator of such estate, otherwise than is provided in that act; and it makes no provision for enforcing such claims, except by the proviso before referred to.

The statute, by saving the remedy against heirs and devisees, makes the real estate chargeable in their hands, but it goes no farther.

Where the heir at law takes nothing by descent, he should not be joined in the action against the devisee. The statute which authorizes the bringing of an action against heirs and devisees jointly, intends, by heirs, those who have actually inherited.

Whether a creditor, whose claim depends upon a contingency, may have a remedy in chancery, so as to reach the personal estate in any case, *quœre ?*

COVENANT. The defendants were Thomas J. Harris and Jedediah H. Harris, sons of John Harris, deceased ; Elizabeth Harris, his widow ; Levi Sargent, and Rosamond, his wife, who was a daughter of said John ; George Chapman, and Elizabeth, his wife, who was a grand-daughter of said John ; Elizabeth Harris, a grand-daughter ; and John W. Harris, Sidney Harris, Tracy H. Harris, and John Harris Sargent, grand-sons of said John.

The declaration alleged that said Thomas J. Harris and said John Harris, deceased, on the 23d of June, A. D. 1837, by their writing obligatory, covenanted and agreed to and

with the plaintiff, that whereas the plaintiff had, on said 23d of June, signed with them, the said Thomas J. and John, an instrument purporting to be an indemnifying bond, to one Jesse Evans, by which they, the said Thomas J. and John Harris and the plaintiff, covenanted and agreed with Evans to repay him one thousand dollars, in four years from said 23d of June, and interest thereon, in case said Evans should see fit to reconvey five shares in the Claremont Manufacturing Company to Thomas J. Harris aforesaid, which shares he, the said Evans, had on said 23d of June purchased of Thomas J. Harris, they, the said Thomas J. Harris and John Harris, would pay the bond given to Evans if required so to do, at the expiration of said four years from the date thereof, and that they would save the plaintiff harmless and uninjured from any loss or damage that might accrue to him on account of having signed said bond. The declaration then averred that John Harris, by his last will and testament, published and declared on the 18th day of March, A. D. 1839, devised certain real and personal estate of which he died seized and possessed, in the manner following, to wit:

1st. To Elizabeth Harris, his wife, all his real estate in Lebanon; also, a horse and chaise, and all his household furniture, except what he might otherwise dispose of; also, one hundred dollars, to be paid in one year from his decease.

2d. To Rosamond B. Sargent twenty-five dollars, besides all heretofore given to her, to be paid in six months from the decease of said testator.

3d. To Jedediah H. Harris ten dollars, and all his interest in the book accounts of the partnership formerly existing between the said John Harris and Jedediah Harris.

4th. To Thomas J. Harris the house and land in Newport, belonging to the testator; also, one hundred acre lot of land in Hyde Park, Vermont; also, all the testator's property in the Croydon Turnpike; also, one share in the "Fourth New-Hampshire Turnpike Corporation."

5th. To Elizabeth Chapman one hundred dollars, to be paid in six months from his decease.

6th. To John Harris Sargent one hundred and fifty dollars, to be paid in six months after his decease.

7th. To each of his grand-sons, John Waterman Harris, Sidney Harris and Tracy H. Harris, three hundred dollars; and expressed it to be his will that said sums should be put at interest, and the principal and interest paid to each of the last mentioned devisees when they respectively should arrive at majority.

8th. To his grand-daughter, Elizabeth Harris, fifty dollars, and a feather bed and necessary covering, it being the whole that was his daughter Elizabeth's before her decease.

9th. The rest and residue of his property or estate, not disposed of as above, to be equally divided between his wife, Elizabeth Harris, and his son, Thomas Jefferson Harris.

The declaration then averred that John Harris, by his last will and testament, appointed said Thomas J. Harris executor, and shortly after deceased, to wit., on the 31st day of March, A. D. 1839;—that on the first Tuesday of April, 1839, the will was duly proved, approved and allowed, by the judge of probate for the county of Grafton, at a probate court held, &c., and was thereupon committed to said Thomas J. Harris for execution;—that the estate was represented as insolvent;—that a commissioner was appointed on the 3d day of September, 1839, to receive and allow the claims of the creditors, who, after giving due notice, &c., made his report, and returned a list of the claims to the judge of probate, which was duly accepted at a court of probate held on the first Tuesday of September, 1840.

It was farther averred, that said Thomas J. Harris filed his account of administering upon said estate, for examination and allowance;—that due notice was given, &c., and that on the first Tuesday of May, 1841, said account was allowed and a final settlement made, by which a balance was found in his hands as executor, due to said estate, of seven hundred eleven dollars twelve cents, which balance, according to the will, belonged to the said Elizabeth Harris, widow,

and to Thomas J. Harris, to be equally divided between them; and that after the death of the said John Harris, and before the issuing of the writ, the devisees received the real and personal estate devised to them, according to the provisions made in the will, to a large amount, to wit., of the value of four thousand dollars.

The declaration then averred that Jesse Evans, on the 23d day of June, 1841, claimed his right to re-convey the five shares in the Claremont Manufacturing Company to Thomas J. Harris, and to receive the payment of the one thousand dollars and interest thereon, and that Evans made out and tendered to Thomas J. Harris re-conveyances of said five shares, and of the dividends, incomes, or profits due and payable for them to him;—that thereupon Thomas J. Harris refused to accept the shares and the aforesaid dividends, &c., and to pay said one thousand dollars and the interest thereon, according to said covenants. Whereupon the plaintiff became liable to pay the same, and did then and there pay said sum of one thousand dollars and the interest thereon.

It was then averred that during all the time that the administration of the estate of John Harris was kept open, the claim of Jesse Evans was a demand which could not be allowed by the commissioner, because the same depended on a contingency which had not happened before or during the time allowed to the creditors to prove their demands:

By reason of all which the said devisees were bound by law to keep, perform and fulfil the covenants and agreements of the said John Harris, in his said writing obligatory to the plaintiff. Yet neither the devisees nor the said Thomas J. Harris, though thereto requested, had kept or performed said covenants and agreements.

The defendants demurred to the declaration.

And it was agreed by the parties that if, in the opinion of this court, the action could not be sustained, the plaintiff should become nonsuit; but if the court should be of opinion that the action could be maintained upon proof of the

facts alleged, the demurrer was to be withdrawn and the action stand for trial, with leave to amend, if any amendment was deemed necessary.

*Duncan*, for the plaintiff. We rely upon the act relating to testate estates, *sect.* 9, 1 *N. H. Laws* 357, which enacts that the estate of every person dying testate shall stand chargeable with his just debts, in the manner in which intestate estates are chargeable. The debts are a general charge upon the estate. *Ditto* 353.

All just demands against an estate must be satisfied before it can be enjoyed by the heirs or devisees. 2 *Peters* 658, *Wilkinson* vs. *Leland.*

A descent is not an unqualified title. The estate descends liable to all claims against it. 4 *Kent* 409.

This case does not come within *Hutchinson* vs. *Stiles*, 3 *N. H. Rep.* 404.

The act of June 9, 1808, 1 *Laws* 65, providing a remedy against the representatives of deceased parties to joint obligations and contracts, enacts that the heirs, executors and administrators of any person jointly bound, shall be liable.

The statute of July 2, 1822, puts devisees in the same state as heirs. *Judge of Probate* vs. *Brooks*, 5 *N. H. Rep.* 82.

*T. Leland*, for the defendants.

1st. This case comes up under the form of a general demurrer, but in fact on the law arising upon the declaration and will of John Harris, deceased.

The estate was settled in the insolvent course, and this suit is brought against the defendants as devisees, under the proviso of the 7th section of the act for the settlement of insolvent estates. *Laws* 364.

The statute expressly confines actions of this kind to heirs and devisees, and is silent as to legatees, and the declaration also sets them up as devisees, not legatees.

The widow and Thomas J. Harris are the only devisees ;

the others are all legatees. The legatees, therefore, are improperly joined in this suit, and cannot be chargeable in any suit under the statute, because legatees are not made chargeable by the proviso ; it only extends to heirs and devisees. The statute giving the remedy is to be construed strictly when it affects the heirs of an estate. 20 *Pick.* 2, *Hall* vs. *Bumstead.*

The defendants are not parceners, but take as purchasers, and have distinct and separate interests. An heir takes by descent real and personal estate. A devisee takes lands only under a will. A legatee takes personal estate only under a will. A devise is a gift of lands. A legacy or bequest is a gift of personal property, or that which arises out of real estate. *Jacob's Law Dic'y, Devise, Legacy ;* 2 *Black. Com.* 512 ; *Toller's Exrs.* 299, 409.

2d. These defendants do not take as heirs, but as devisees and legatees under the will. If they were heirs they would take and hold in common till they severed, but as devisees and legatees they hold in severalty, not jointly, and if liable at all are liable severally and not jointly for a contribution.

The statute of 3 *W. & M., ch.* 14, we believe has never been adopted in this State, which authorizes the joining heirs and devisees. It affects lands only, not legatees. If adopted here, it does not affect this case. We are to be governed by our statute ; and if so, heirs and devisees only are chargeable, and that, too, separately. If devisees and legatees are jointly liable, who have distinct portions, some greater, some less, the judgment must be joint, which would operate extremely injuriously when the law is well settled that heirs, &c. shall be chargeable only to the amount received.

If there is no joint interest there can be no joint judgment or joint liability.

In Massachusetts, where their statute extends to heirs and devisees and legatees, it is considered as almost legally settled that they cannot be joined, but must be pursued separately, and reasons conclusively assigned against a joint suit ;

but by the extent of their equity jurisdiction they now pro-
ceed in equity, where full and ample justice can be meted
out to each defendant; but before their present equity juris-
diction, the common law was made to yield to the necessity
of the case.   13 *Mass.* 384, *Howes* vs. *Bigelow;* 20 *Pick.*
2, *Hall* vs. *Bumstead;* 22 *Pick.* 503, *Wood* vs. *Leland;* 1
*Metcalf* 387, *Wood* vs. *Leland.*

3d. The husbands of these female legatees cannot be
chargeable.   They are neither heirs or devisees.   When
they intermarried, they took the property as purchasers by
operation of law.   It was not a debt of the wife, for which
the husband can be liable.   On intermarriage the law im-
plies a legal consideration.   13 *Mass.* 384.

4th. Thomas J. Harris cannot be chargeable for the devise
of real estate in Vermont.   Being out of the jurisdiction of
this State and court, the lands are not assets within the State
for which he is chargeable here.   9 *Mass.* 395, *Austin* vs.
*Gage.*

5th. The tender of the re-conveyance, the time and place,
were insufficient in law to enable the plaintiff to maintain this
suit.

There was no notice that the plaintiff was to re-convey.
3 *Starkie, Pt. 4th,* 1396, 7; 2 *Starkie, Pt. 4th,* 92; 5 *East*
107, *Bordenave* vs. *Gregory.*

If no place is mentioned in the contract, it must be done
where the registry of the transfer is kept.   *Ibid.*

If Evans could not recover, the plaintiff is not entitled to
maintain an action.   He paid on his own responsibility.


*Duncan,* in reply.   It is true that all the real estate went
to the widow and Thomas J. Harris, and there is a techni-
cal distinction between a legacy and a devise.   But this dis-
tinction has not been regarded in this State.   The terms are
used as synonymous.   1 *N. H. Laws* 352, *sect.* 2.

Story says there are three ways to bring actions against
heirs and devisees.   1. A joint action; 2. To find out the

proportion, and bring actions against each ; 3. To bring successive actions. *Story on Pleading* 316 ; 13 *Mass.* 384.

Upon the statute of Wm. & Mary the action was brought against heirs and devisees jointly. 1 *P. Wms.* 100, *Gawler* vs. *Wade ;* 2 *Atk.* 125.

The husband may be sued. 1 *Lilly* 145. The wife cannot be sued without.

It makes no difference that there were lands in Vermont. We do not expect to reach them. There were lands in this State.

There is nothing to show that it was necessary to make a transfer of the shares on the books. Persons held certificates, and they might be assigned. 5 *East* 107.

The action is brought on the authority of *The Judge of Probate* vs. *Brooks.*

PARKER, C. J. The plaintiffs rely upon the statute of July 2, 1822, providing that the estate of every person dying testate shall stand chargeable, among other things, with the just debts which be owed, in the same manner in which intestate estates are charged. 1 *N. H. Laws* 357. Another statute of the same date, relative to the descent and distribution of intestate estates, enacts that they shall stand chargeable with the just expenses of the administration, &c., the just debts which the deceased owed, and with the support of the infant children until they arrive at the age of seven years, and that the residue of the personal estate, if any, shall be distributed to the widow and heirs, &c. 1 *N. H. Laws* 353.

It is a general principle pervading our legislation that the estate of an individual, real and personal, with certain exceptions in the case of poor debtors, is liable for the payment of his debts. It applies as well during the lifetime of the debtor as afterwards, but in both cases it is to be made effectual by the force of other special provisions of the law for that purpose.

If a debt may be said to exist when the remedy is barred

by statute, the property of the debtor cannot be .applied to the payment of it, whether the statute be applicable to the estate of a living debtor, or that of one who has deceased.

In *Wilkinson* vs. *Leland*, cited for the plaintiff, it is said that the title to lands which vests in the heir and devisee, is " encumbered with all the liens created by the party in his life-time, or by the law at his decease ;" that " it is not an unqualified although it be a vested interest," and that " it confers no title except to what remains after every such lien is discharged." It is stated in the same opinion that " the laws of Rhode-Island in all cases make the real estate of persons deceased chargeable with their debts, whether inhabitants or not ;" but it is farther said, "If the authority to enforce such a charge by a sale be not confided to any subordinate court, it must, if at all, be exercised by the legislature itself." 2 *Peters' S. C. Rep.* 660.

The general provision of the law making estates liable to the payment of debts, was inserted on account of different rules having prevailed at common law ; and we must look to the particular statutes for our authority to administer this general principle, and for the manner in which it is to be made effectual.

The estate of John Harris was administered as an insolvent estate, and this was a legal mode of administration, notwithstanding it proved to be solvent. By the provisions of the act regulating the settlement and distribution of insolvent estates, all demands which the deceased owed at his death, whether payable or not at the time, might be presented and allowed by the commissioner appointed for the purpose, and paid through the intervention of the administrator by a sale of the property of the deceased.

There are provisions for an objection by the executor or administrator, and for an appeal from the decision of the commissioners by the creditor, and for the prosecution of suits in such cases against the executor or administrator. The 7th section provides that all claims exhibited, rejected

and not prosecuted, and all demands which might have been exhibited, but were not, shall be forever barred, and that no action against any executor or administrator of any such estate shall ever be sustained otherwise than in this act is provided. There is then a proviso, " that nothing herein contained shall be construed to impair any remedy of a creditor against the heirs or devisees of any such estate, whose demand could not be allowed by the commissioners, because the same depended upon a contingency which had not happened before or during the time allowed to the creditors to prove their demands." 1 *N. H. Laws* 364.

The claim of the plaintiff depended upon a contingency which had not happened at the expiration of the commission. He is, therefore, within the saving of this proviso, if he has by any other law a remedy ; and the question is, what remedy he has against the heirs or devisee of the estate.

We have no statute upon this subject. By the common law the executor was to collect and convert the personal estate into money, and pay the debts according to their priority ; but lands, unless expressly made chargeable, or assets, descended upon the decease to the heir, unless devised. In the latter case the devisee became entitled to them.

The executor or administrator could not sell the lands for payment of debts, unless expressly charged for that purpose.

When, however, the ancestor bound himself and his heirs in an obligation, the obligee might sue the heir or executor at his election, and have execution of the land descended to the heir.

But if the heir, before an action brought against him, had aliened the assets, the obligee was without remedy ; and if the ancestor had devised the lands, the creditor by the common law could not reach them in the hands of the devisee, and had no remedy against heir or devisee.

To remedy the evils arising from this state of the law, the statute of the 3 *and* 4 *Wm. & Mary, ch.* 14, made pro-

vision that where the heir had aliened, he should be liable to such debts to the value of the land descended, *in an action of debt ;* and the same statute, reciting that several persons had *by bonds* or *other specialties* bound themselves and their heirs, and had afterwards by will disposed of their lands to defraud their creditors, enacted that such dispositions should be deemed and taken *only as against such creditor or creditors* as aforesaid, his heirs and their heirs, &c., to be fraudulent and void.   And that such creditors might be enabled to recover *their said debts*, enacted that, in the cases before mentioned, " every such creditor shall and may have and maintain his, her and their action and actions *of debt* upon his, her and their said bonds and specialties, against the heir and heirs at law of such obligor or obligors, and such devisee and devisees, jointly by virtue of this act," and that the devisee should be liable for a false plea, in the same manner as the heir.   *Bac. Abr., Heirs, &c., F, vol.* 3, *p.* 26, 27 ; 6 *Mass. R.* 151, *Hays* vs. *Jackson.*

By this statute the heir who had aliened was liable in an action *of debt*, and the devisee also in an action of debt.   No provision is made by it for maintaining any other action.

It is very clear that, by this statute, devisees as well as heirs were liable to the suit of creditors by bond and specialty only.   And in the argument of *Judge of Probate* vs. *Brooks*, 5 *N. H. Rep.* 84, I suggested that as a reason why the statute could never have been adopted here, being contrary to the policy of our laws, which give no preference to creditors by specialty.   The court, however, held otherwise, and if that statute were not adopted there would seem to be no remedy against a devisee here.   And I am of opinion, upon farther consideration, that the remedy is extended to all creditors here by the 3d section of the act of 5 *Geo.* 2, " for the more easy recovery of debts in His Majesty's plantations and colonies in America ;" which enacts that after the 29th of September, 1732, the houses, lands, negroes, and other hereditaments and real estates, situate and being within

any of the said plantations, belonging to any person indebted, shall be liable to and chargeable *with all just debts, duties and demands, of what nature or kind soever*, &c., and shall and may be assets for the satisfaction thereof, in like manner *as real estates are* by the law of England liable to *the satisfaction of debts due by bond or other specialty*, and shall be subject to the like remedies, proceedings and process, &c. *See N. H. Prov. Laws* 235.

This statute having been made expressly for the colonies, is adopted by our constitution as one of the laws which had been used and practised on here, and may be considered as part of our common law, being in amendment of it.

By the operation of this colonial statute, then, and by the proviso in the statute relative to estates administered in the insolvent course, any creditor whose demand depended upon a contingency, so that it could not be allowed by the commissioner, has a remedy here by the common law against the heir; and, by the statute 3 *and* 4 *of Wm. & Mary*, a farther remedy against the heir and the devisee.

This action includes two devisees, and against them we see no reason why it may not well be maintained.

But it includes also others, who are children of John Harris, and who, it is averred in the declaration, have legacies by his will.

The plaintiff's counsel argue that it may be supported against them, by the force of the term devisees in the exception, because that term is used to include those who have personal estate by the will, as well as those who have real estate. There is no doubt that the terms legatee and devisee are sometimes used as synonymous. The former is perhaps more often used as including the latter. It is so used in the clause of the statute cited by the plaintiff's counsel, providing that where there is no heir or legatee of any estate of a person deceased, the same shall accrue to the State. 1 *N. H. Laws* 352.

But the term devisees, in the proviso of the statute for the

settlement of insolvent estates, cannot be considered as in-cluding legatees of personal estate, because such construction would be useless. The proviso is, that the act shall not impair the remedy of creditors, whose demands depend on a contingency against the heirs or devisees. It gives no new rights, and creditors had no right of action against legatees before its passage, which the act could impair.

There is no provision by the common law, or by any English statutes in amendment of it before the Revolution, or by our statutes, for the maintenance of an action at law by a creditor of an estate against a legatee, to recover his debt.

It is the duty of the executor or administrator first to discharge all the debts, and when they are paid he is to pay the legacies. If there is not sufficient to pay both, the legacies abate to the extent of the deficiency ; and " if the legatees have been paid their legacies, they are afterwards bound to refund a ratable part, in case debts come in more than sufficient to exhaust the *residuum* after the legacies paid." *See* 2 *Black. Com.* 513.

The legacies are reached, for the payment of debts, through the executor or administrator, by retaining until the debts are paid, or if more come in afterwards, by recalling sufficient.

Our statute, respecting the settlement of insolvent estates, has cut off this remedy, so far as contingent demands which could not be allowed by the commissioner are concerned, by its provision that no suit shall be sustained against the executor or administrator otherwise than as is provided in that act. 5 *N. H. Rep.* 82. As no judgment can be had against him, he has no occasion to recall any thing from the legatees to answer such demands, and the statute, in taking away this remedy through the administrator, has provided no other by which the legatees are made liable.

This is otherwise in Massachusetts. *See* 22 *Pick.* 505 ; 1 *Metcalf* 387.

Our statute, by saving the remedy against the heirs and

devisees, makes the real estate chargeable in their hands, but it goes no farther.

We have found no case where a legatee was held to contribute to an heir. Probably none is to be found, as in all but insolvent estates it is the duty of the administrator to pay, and he may recall the legacies for the purpose.

If a legatee were bound to contribute, or to pay the heir or devisee, that would not give the creditor a direct remedy against the legatee.

There is, perhaps, good reason why creditors should not have a direct remedy against legatees, as many legacies are very small, and more evil might result from authorizing suits directly against them, than accrue from the present state of the law upon this subject.

No way seems to be provided for a creditor to reach a distributive share of the personal estate in the hands of the heirs, where the suit against the administrator is taken away. *See* 13 *Mass. R.* 390.

Perhaps the statute should be amended, so that, in case of estates actually solvent, a remedy should remain against the executor or administrator upon demands which could not be allowed by the commissioner.

Another question in the case is, whether the action should be brought against the heirs and devisees jointly, although the heirs take nothing by descent. The statute says the creditor may maintain his action against the heirs and devisees jointly.

Some of the cases in equity would, on a first inspection, seem to hold that it is necessary to bring a joint bill or action against the heirs at law and devisees, although the heir have nothing. 1 *P. Wms.* 99, *Gawler* vs. *Wade ;* 2 *Atk.* 125, *Warren* vs. *Stawell ;* 1 *Chitty's Pl.* 40.

But we do not see the necessity of it, when it clearly cannot be maintained against the heir ; and if the heir have nothing, he may plead *riens per discent.* *See* 2 *Tidd's Pr.* 855.

By heirs must have been intended those who actually inherited ; for, being an action *ex contractu,* if not maintained against all those sued, the plaintiff could not have had judgment against any of the defendants until the passage of a statute within a few years past. 11 *Johns. R.* 102, *Livingston's Exrs.* vs. *Tremper ;* 2 *Saund.* 7, *note* 4.

There is a case, 5 *Day* 419, *Booth* vs. *Starr,* where a grantee in a deed, the covenant of warranty having been broken after the settlement of the estate of the grantor in the insolvent course, reached the surplus estate in the hands of the guardian or trustee of the heir by a bill in chancery.

But we need not consider at this time whether a creditor of an estate represented insolvent, whose demand depended upon a contingency, and could not therefore be allowed, can in any case come into equity to enforce payment against legatees who have received their legacies.

In the case in Connecticut, the rights of legatees were not in question ;—the estate was held in trust by a guardian of the heir; and there was no remedy at law against any devisee.

Upon the case now before us, the defendants are entitled to judgment upon the demurrer. But the plaintiff may, perhaps, have leave to amend, by discontinuing against all the defendants except the two who take the real estate as devisees.