558 ROCKINGHAM.

## Plumer & a. v. Plumer.

The fact that a solvent estate is settled in the insolvent course, does not prevent an heir from maintaining an action for an injury to the realty, or for incidents removed therefrom, if it appears that the real estate is not required for the payment of debts, or the expenses of administration.

As a general rule, a tenant cannot dispute the title of his landlord during the term, if he has recognized it by the payment of rent, or the taking of a lease.

As between grantor and grantee, all manure made in the ordinary course of husbandry, and which is upon the premises at the time of the sale and conveyance, will pass to the grantee as an incident to the land, unless there be a reservation in the deed.

Manure made by a tenant upon a leased farm, in the ordinary course of husbandry, is the property of the lessor, and belongs to the farm, as an incident necessary for its improvement and cultivation; and the tenant has no right to remove it from the premises or apply it to any other use.

Manure made in livery stables, or in buildings unconnected with agricultural property, belongs to the tenant, unless there be a contract to the contrary.

Manure upon a farm, when separated and removed therefrom, becomes personal property, and trover may be maintained for its conversion.

A landlord may maintain trover against his tenant to whom he has leased a farm, for manure taken and removed from the premises during the continuance of the lease, and converted by the tenant to his use.

Upon the partition of real estate by a committee and the decree of the judge of probate, all the incidents and appurtenances belonging or attached to the several parts of the land, pass with those parts to the several individuals to whom they are assigned, unless there be a different order made by the committee in the partition.

TROVER, for sixty loads of manure. The writ was dated January 24, 1853.

The parties agreed to the following facts:

The defendant and the father of the plaintiffs were the owners and tenants in common of a farm in Epping, subject to the life estate of their father therein, who died in March, 1852.

June 21, 1849, the father of the plaintiffs died intestate, leaving a widow, who administered upon his estate, and the plaintiffs, who were minors, and his only heirs at law. Said estate was solvent, though settled in the insolvent form.

Plumer *v.* Plumer.

Nath'l Bachelder was duly appointed guardian of the plaintiffs. On the 14th of April, 1852, the parties joined in a petition to the judge of probate for partition of said farm, and in pursuance thereof, partition was made by the committee, July 9, 1852, and decreed on the 11th of August, 1852.

On the 15th of May, 1852, the parties made an agreement in respect to the occupation of said farm, and in pursuance of said agreement, the defendant occupied said farm for the term specified therein. The agreement was as follows:

" Agreement made this fifteenth day of May, A. D. 1852, between Nathaniel Bachelder, as guardian of Ellen J. Plumer and Sarah F. Plumer, minors, children of Daniel Plumer, jr., late of Epping, deceased, on the one part, and Samuel Plumer, 2d, of said Epping, on the other part, witnesseth; 1st, the said Nathaniel Bachelder agrees that the said Samuel Plumer, 2d, may occupy and improve from the present date until the first day of December next, in a proper and husbandlike manner, all the land and buildings now owned in common and undivided by the said Samuel Plumer, 2d, and the heirs of the late Daniel Plumer, jr., except the small house now occupied by the widow of said Daniel Plumer, jr., and the garden adjoining and easterly from said house, provided the said Samuel Plumer, 2d, will pay therefor to him, the said Bachelder, the rent of fifty dollars for the term aforesaid; and the said Samuel Plumer, 2d, agrees that he will pay the aforesaid sum of fifty dollars for the use of said premises during the term aforesaid, and also agrees that the said Lydia A. Plumer may occupy, free of rent, the small house and garden aforesaid, during that time, with the privileges appertaining thereto.

NATHANIEL BACHELDER,<br>
Guardian of D. Plumer, jr.'s heirs.<br>
SAMUEL PLUMER, jr.

Epping, May 15, 1852."

In November, 1852, the defendant drew the manure in question from the cow and hog yards, where it was made, (and which was not in heaps,) on to his own land, where it was spread and ploughed into the ground.

The yards where said manure was made and from which it was drawn by the defendant were upon that part of the farm assigned to the plaintiffs by the aforesaid partition. The value of said manure thus drawn away by the defendant was $49,58, a part of which, of the value of $8,68, was made before the 15th day of May, 1852, and the rest after that date.

The estate of the plaintiffs' father was represented insolvent, October, 1849, and a commissioner appointed at the same time, and the report of the commissioner accepted May 14, 1851, from which an appeal was taken, and the list of claims settled in May, 1852.

The administratrix obtained license to sell real estate for the payment of debts, in October, 1852, and has never settled any administration account.

Said manure was made by the stock and hogs of the defendant, and kept upon the produce of said farm.

On the part of the defendant, evidence was introduced tending to prove that after the death of the plaintiffs' father, the defendant carried on the farm, owned the stock and hogs kept thereon until the death of his father, after which he continued in the possession of said farm without any particular agreement, and kept his stock and hogs thereon upon the produce raised by him on said farm until May 15, 1852.

Certain questions of fact were submitted to and found by the jury, which are embraced in the foregoing statement, and judgment is to be rendered in the action, or a new trial ordered, according to the opinion of the court upon the foregoing case; and the questions arising on the case were reserved and assigned to the determination of the superior court.

Plumer *v.* Plumer.

*Stickney & Tuck*, for the defendant.

I.   Our first position is, that the plaintiffs cannot maintain this action, because at the time of the alleged conversion, they had not the possession or the right of possession of the property alleged to be converted.

In the first place, the estate of Daniel Plumer, jr., under whom the plaintiffs claim, at the time of said conversion, was in the process of settlement, in the hands of the administratrix, as an insolvent estate.   The administratrix was entitled to the possession of the real estate, and all its incidents, and to the rents and profits thereof.   Comp. Stat. p. 407, § 10.

The heirs had no right to the possession of the real estate while it was in the process of settlement in the hands of the administratrix.   The administratrix has never relinquished or waived her right to the possession.

The defendant can make this defence ; he may defeat an action of trover by proving title in a third person.   *Jones* v. *Sinclair*, 2 N. H. Rep. 320.

He is not estopped by the agreement between the parties. *Carpenter* v. *Thompson*, 3 N. H. Rep. 204.

In the second place, the plaintiffs have parted with their right of possession of the farm, by the agreement.   That operated as a lease to the defendant, or gave him the right to the possession of the farm, and all its incidents, until December 1.   *Hunt* v. *Haselton*, 5 N. H. Rep. 216.

In order to maintain trover, the plaintiffs must prove that they had the actual possession, or the right of actual possession, at the time of the conversion, and that they had a general or special property in the articles, and a right to their present custody.   *Jones* v. *Sinclair*, 2 N. H. Rep. 319; *Odiorne* v. *Colley*, 2 N. H. Rep. 66 ; *Wheeler* v. *Train*, 3 Pick. 258.

A lessor for years cannot maintain trespass during the term.   *Anderson* v. *Nesmith*, 7 N. H. Rep. 167.

The plaintiffs not having the possession, or the right of

possession, at the time of the conversion, cannot maintain this action.

II.   Our second position is that the manure in question was the property of the defendant, and he had a right to haul it away.

In the absence of any contract on the subject, the tenant has a right to the manure made by him on the place, and may remove it during the term.   *Kittredge* v. *Woods*, 3 N. H. Rep. 506; 2 Kent's Com. 347 n. a., and cases cited; *Smithwick* v. *Ellison*, 2 Iredell 326; *Staples* v. *Emery*, 7 Greenl. 201; *Parsons* v. *Camp*, 11 Conn. Rep. 525.

The tenant of a tavern stand or livery stable has a right to the manure made by him.   *Needham* v. *Allison*, 4 Foster's Rep. 355.

It is said good husbandry requires the manure to be used on the farm, and for that reason the tenant cannot remove it.   Good husbandry equally requires the hay to be consumed on the farm, but the tenant is under no obligation to consume it there, and upon the same principle, we think, he is under no obligation to use or leave the manure on the farm.

The defendant might have kept his creatures and his produce on his own land, and made all the manure there.   Suppose he had done so, would the plaintiffs have been entitled to the manure?   We think not; neither is he any more entitled to it because it was made on the land which he hired of the plaintiffs.

It may be said that by the division the manure on the land assigned to the plaintiffs passed to them.   We concede that by a deed of a farm without reservation, the manure passes to the grantee, but it does not follow that a partition by a committee has the same effect.   In a deed, the grantor can reserve the manure, and if he does not, the presumption is that he intended to convey the whole; but in a partition by a committee, the party has no opportunity to reserve the

manure, and no such presumption arises. In this case most of the manure was made after the division.

III. Our third position is, that this is not an ordinary let-ting, in the ordinary course of husbandry. Farms are generally let from year to year, or for a term of years. In this case the letting was only from May 15, to December 1—six and a half months.

The same principles cannot be applied in this case that are applied to ordinary cases.

This case comes under the same class of cases as the case of *Needham* v. *Allison*, 4 Foster's Rep. 355, in which the court held that the tenant was entitled to the manure.

*Marston*, for the plaintiffs.

The plaintiffs must recover, unless the positions taken by the defendant constitute a valid defence to the action. *Pinkham* v. *Gear*, 3 N. H. Rep. 484.

The defendant takes three positions :

I. The estate of the plaintiffs' father was administered in the insolvent course, and by chapter 168, section 10, of the Compiled Statutes, the administratrix must be presumed to have the possession of the land.

We contend that the statute applies only to estates actually insolvent; and the case finds that the estate of the plaintiffs' father was solvent.

The language of the statute so indicates. It would have been as easy to say " estates administered," as " insolvent estates," if that had been the intention.

There is reason for the provision in case of estates actually insolvent; but none in case of solvent estates adminis-tered in the insolvent course. The law intends that when an estate is insufficient to pay creditors in full, that all the real estate, and the profits thereof, shall be applied by the administrator towards the payment of the debts. The ad-ministratrix may at once enter upon the real estate, and take the profits thereof. Otherwise the heirs might occupy the

real estate until the administratrix should sell the same, and the administratrix, if she could recover the profits at all, would be compelled to resort to the heirs.

But if the estate is solvent, the profits of the land are of no importance to the administratrix, and would not be needed to pay the debts.

If the provision were intended to apply to all estates administered as insolvent, the administratrix would have no right to take the land, or the profits, until the decree is passed in the court of probate that the estate be so administered. It is difficult to see any reason or propriety in such a construction of the statutes.

But if the statute does apply to all estates administered as insolvent, we still contend that these plaintiffs have a right of action. Some person must have a right to sue for trespasses to real estate, *at once.* It cannot be that all right of action was postponed by the statute, till the close of the administration, when the benefit of the remedy might be entirely lost.

The administrator has no authority, by the statute, to bring a suit on account of the realty. He may bring a suit on account of the personalty, but manure, severed from the land, does not become personal property *quoad* the administrator. It is not personal assets in his hands.

Again, the statute could not be intended to curtail the rights of action in whatever party has the right to sue. Whoever may bring any suit, on account of fixtures removed, may bring all appropriate suits.

But if an administrator bring trover or trespass, a judgment in his favor vests the property in the defendant, and so the administrator, in effect, exchanges real property which belongs to the heir, for money. The administrator cannot be supposed to have this power conferred upon him, to the injury, it may be, of the heir. He might thus recover large sums for the cutting of valuable timber, for instance, and if

he became worthless, leave the heir only the meagre remedy upon the administration bond.

We say, therefore, that even if the statute gives the administrator of a solvent estate, administered as insolvent, the right to the rents and profits of the land, it does not exclude the heir from his immediate right of action for trespasses to the land.

But, certainly, whatever the construction of the statute, the administrator cannot bring a suit, founded on his possession, unless he is actually in possession. And in this case, the administratrix was never in possession. The land was occupied by the defendant, up to May 15, 1852, when the defendant occupied it under his lease from the plaintiffs. The land is in the possession of the plaintiffs, by their guardian, and as against the defendant, a wrong doer, they can maintain trover on this title alone. *Pinkham* v. *Gear*, 3 N. H. Rep. 484.

But the defendant is also estopped by the lease which he has accepted from the plaintiffs, to deny their possession, or right of possession; and by joining in and accepting partition of the land, from denying their title in every form.

The defendant's second position is, that the manure was made by the defendant's cattle. And his third position is, that the defendant had a parol lease of the land. But the manure was made upon the land; and the authorities are all against the defendant on this point. In such a case, it belongs to the owner of the land. The manure made upon a farm is not only an appurtenance to the realty which passes with a conveyance of the land, but it is so inseparably incident to the freehold, that it forms an exception to the usual rule as to fixtures, and cannot be removed by an outgoing tenant, at the end of the term. *Daniels* v. *Pond*, 21 Pick. 367; *Middlebrook* v. *Corwin*, 15 Wend. 169; *Bannington* v. *Justice*, L. G. 289; *Lasell* v. *Read*, 6 Greenl. Rep. 222.

EASTMAN, J. The estate of the plaintiffs' father, to which one undivided half of the premises spoken of in the case belonged, although solvent, was settled in the insolvent course. Had it been actually insolvent, no possession of the real estate could have been taken by the heirs, because the whole estate, real and personal, would be required to pay the debts and the expenses of the administration; and the rents and profits would go to the administratrix. Rev. Stat., ch. 159, § 10; Comp. Stat., ch. 168, § 10. Being solvent, however, these premises might, or might not, be required to pay the debts. If not necessary, the heirs would be entitled to the land, and of course to the rents and profits. And even if it were necessary, they might prevent a sale, and obtain the possession, by giving bond to the judge of probate, under the provisions of § 4, ch. 164, Rev. Stat.; Comp. Stat., ch. 173, § 4.

The case finds that the administratrix obtained license to sell the real estate, in October, 1852. But it does not find that these premises were sold, or that it was necessary to sell them. For aught that appears, or is suggested, the plaintiffs' father may have left other real estate which could be sold to pay the debts. It seems that the claims against the estate were settled in May, 1852, so that the amount necessary to be made out of the real estate was not probably large. And we take it that this land was not needed in the settlement of the estate.

The administratrix interposes no claim to these premises, and the judge of probate has entertained a petition for their division, and decreed a partition of the same. This he could not have done had there been any dispute in regard to the ownership, or any complaint from the administratrix or creditors. Moreover, the defendant himself united in the prayer for the partition, and must, of course, have stated that there was no dispute in regard to the title, in order to have given the probate court jurisdiction of the application. Comp. Stat., ch. 219, § 21.

Upon this statement, it would seem evident that, nothing appearing in the case to the contrary, the plaintiffs were the owners of the premises, and were entitled to the management thereof, and to the benefits arising therefrom; and so far as ownership is to be considered, they could maintain any action in regard to the same.

Again, the defendant hired the premises of the plaintiffs, and, as tenant, he thereby admitted their title. As a general rule, the tenant cannot dispute the title of his landlord; and if he has recognized it, by accepting a lease, or by the payment of rent, or the like, he will be estopped from disputing it. *Carpenter* v. *Thompson,* 3 N. H. Rep. 204; *Gray* v. *Johnson & a.,* 14 N. H. Rep. 414; *Russell* v. *Fabyan,* 7 Foster's Rep. 529; *Heath* v. *Williams,* 25 Maine Rep. 209; *Jackson* v. *Rowland,* 6 Wend. 670.

Upon the whole, we think there is no difficulty in sustaining the suit, upon the ground of want of title in the plaintiffs. The premises belonged to them, as heirs of their father, and in the absence of its appearing that they were wanted for the payment of his debts, it is to be taken that they were not wanted. The plaintiffs were in possession of the premises, as heirs, and without claim from any one, rented the same to the defendant, who, it would seem, is not in a position to dispute their title.

Whether trover could be maintained for the manure in question, must depend upon the fact whether the plaintiffs had the possession of it, or the right of possession, and whether the defendant converted it or not.

It is said that manure, generally, is personal property, and goes to the executor. *Pinkham* v. *Gear,* 3 N. H. Rep. 484; *Sawyer* v. *Twiss,* 6 Foster's Rep. 347. And no objection was taken to the form of the action in those cases, or in *Needham* v. *Allison,* 4 Foster's Rep. 355; in all of which trover was brought.

In *Conner* v. *Coffin,* 2 Foster's Rep. 538, which was a suit brought to recover for manure, the form of action was

trespass, the plaintiff being at the time the owner of the premises, and in possession. And in many cases, either trespass or trover may be brought.

It is apparent that the plaintiffs had not the possession of the premises when the manure was removed, and could not at that time have maintained trespass *quare clausum.* Had they the right of possession to the manure? Did it belong to them? If it was their property, the action may be sustained, for it is not necessary that they should have had the actual possession. Property in chattels draws after it the possession, and the owner may bring either trespass or trover, at his election. 7 Term Rep. 9; 1 Bos. & Pul. 47.

It must be regarded as settled in this State that, as between grantor and grantee, all manure made in the ordinary course of carrying on the farm, and which is upon the premises at the time of the sale and conveyance, will pass to the grantee as an incident to the land conveyed, unless there be a reservation in the deed; and that it makes no difference whether it be in the field, or in the yard, or in heaps at the windows, or under cover. It is an incident and appurtenance to the land, and passes with it, like the fallen timber and trees, the loose stones lying upon the surface of the earth, and like the wood and stone fences erected upon the land, and the materials of such fences, when placed upon the ground for use, or accidentally fallen down. *Conner* v. *Coffin,* 2 Foster's Rep. 538; *Sawyer* v. *Twiss,* 6 Foster's Rep. 345; *Needham* v. *Allison,* 4 Foster's Rep. 335; *Kittredge* v. *Woods,* 3 N. H. Rep. 503.

And although the point was not distinctly raised in these cases, yet we regard it as in effect settled by them, that manure made by a tenant, upon a leased farm, in the course of husbandry, in the absence of any special contract to the contrary, belongs to the farm as an incident necessary for its improvement and cultivation. It is the property of the lessor of the farm, subject only to the right of the tenant to use it during his term, in the cultivation of the land; and

the tenant has no right to remove or dispose of it, or to ap‑ ply it to any other use, either during or after the expiration of his tenancy. *Sawyer* v. *Twiss*, 6 Foster's Rep. 346; *Needham* v. *Allison*, 4 Foster's Rep. 358; *Conner* v. *Coffin*, 2 Foster's Rep. 541.

The reasons for this conclusion have been so fully given in the cases cited, that it is unnecessary to repeat them here. We think them sound, and that the rule, as stated, should be adopted. And the same doctrine has been held in New York, Massachusetts and Maine, as well as in some other States. *Middlebrook* v. *Corwin*, 15 Wend. 169; *Goodrich* v. *Jones*, 2 Hill 142; *Daniel* v. *Pond*, 21 Pick. 371; *Lasell* v. *Reed*, 6 Greenl. Rep. 222; *Wetherbee* v. *Ellison*, 19 Vt. Rep. 379.

This rule does not of course apply to manure made in livery stables, or in buildings unconnected with agricultural property, and out of the course of husbandry. In such cases, the reason of the rule does not apply, and the lessor has no claim to the manure, except such as may result from express contract. *Needham* v. *Allison*, 4 Foster's Rep. 355; *Daniel* v. *Pond*, 21 Pick. 371; *Lasell* v. *Reed*, 6 Greenl. Rep. 222.

This manure, then, being upon the half of the farm set off to the plaintiffs, was their property, provided it passed to them by the partition. It was most of it made in the ordinary course of husbandry, while the defendant held the premises as tenant of the plaintiffs; and, according to the rule stated, belonged to the lessors. The small amount that was made before the leasing, in May, 1852, was attached to the freehold, and belonged to it. It was all there at the time of the division; or if any of it was not then there, it was made on the plaintiffs' land, soon after, by the defend‑ ant, as their tenant. And it appears to be conceded in the argument, that it would have passed to the plaintiffs by deed, were there no reservation. This division was made by a committee duly appointed by the judge of probate, under the statute providing for the partition of real estate

thus situated; and we are not aware of any authority or principle, in such a division, that gives to the one party the appurtenances or incidents of the land set off to the other. Unless there be some reservation or order made by the committee, the buildings, fences, trees, stones, manure, &c., that are upon one part, go to him to whom that part is assigned; and the incidents and appurtenances that are upon the other part, go to him to whom that part is assigned.

We therefore arrive at the conclusion that the right of property in this manure was in the plaintiffs, and that as soon as it was removed from the premises by the defendant, upon his land, and spread and ploughed into the ground there, as the case finds, there was a conversion, for which trover could be maintained. By its separation and removal from the freehold, it became personal property, and both the right of property and the right of possession was then in the plaintiffs. It had ceased to be a part of the premises rented, and the defendant had forfeited his legal right and control over it.

In *Sawyer* v. *Twiss*, 6 Foster's Rep. 348, *Bell*, J., says, "adopting the opinion which we think supported by the strongest reasons, that the manure made upon a farm, in the ordinary course of husbandry, is to be regarded as an incident or appurtenant of the real estate—a part of the freehold—the owner of the fee must, of course, have the authority and right to sell and dispose of it; to remove it from the land at his pleasure; and when so separated, it becomes like the trees and fencing materials when separated, or like muck and marl when dug up and removed—merely personal property."

A landlord has such a property in timber wrongfully cut down during a lease, as to enable him to support trover, if it be removed. *Gordon* v. *Harper*, 7 Term Rep. 13; 1 Saund. Rep. 322, n. 5; 2 Saund. on Pld. and Ev. 875. And although, where goods are let for a term of years, the lessor cannot maintain trover for them during the term, yet if trees or other things fixed and annexed to the freehold, and de-

mised therewith, be severed during the term, they immediately become vested in the owner of the inheritance, and he may maintain trover for them. *Farrant* v. *Thompson,* 5 Barn. & A. 826; 2 Saund. on Pld. and Ev. 879. And in *Pinkham* v. *Gear,* 3 N. H. Rep. 484, one of the points decided was, that trover will lie for manure wrongfully taken from the soil.

With these views, we think there must be judgment for the plaintiffs, for the full amount of the manure. It was either all of it made by the defendant, as the tenant of the plaintiffs, or was so attached to the freehold assigned to him, as to become his, with the other incidents of the land.