*Bond — Witness—Petition to probate court—Trespass—Husband and wife.*

It is not necessary that a bond for the conveyance of real estate should be witnessed.

In petitions to the probate court for the conveyance of real estate under a contract partly performed, it is not necessary to set out all the particulars of the contract. It is sufficient if the substance is set out.

In order to maintain trespass *quare clausum*, the plaintiff must either have or be entitled to have possession of the estate on which the trespass is alleged to have been committed.

R., being in possession of a tract of land under a claim of title, died. His estate was settled in the insolvent course. Upon his death, J. entered and took possession. R.'s administrator, never having been in actual possession, brought trespass *quare clausum*. *Held*, that the action could be maintained upon showing that R. was entitled to the possession.

Husband and wife may be sued jointly for their joint acts, and for assaults and other wrongs where two may concur.

FROM CARROLL CIRCUIT COURT.

TRESPASS, *qu. cl. fr.* The defendants were summoned to answer to "Sanborn B. Carter, of Ossipee, in said county, administrator of the estate of Adam Roberts, late of Tuftonborough, in said county, intestate, deceased, in a plea of trespass for that the said defendants, on the seventeenth day of July, 1874, with force and arms, broke and entered the plaintiff's close, situate in said Tuftonborough, and cut down and carried away, and converted to their own use, one ton of the plaintiff's grass, of the value of $15, there growing, against the peace, &c., to the damage of the said plaintiff in his said capacity (as he says) the sum of one hundred dollars." Plea, the general issue.

The plaintiff offered a letter of administration granted by the judge of probate for Carroll county, July 1, 1873, appointing the plaintiff administrator of the estate of Adam Roberts, deceased; also, certified copy of his bond as such administrator, filed July 1, 1873; also, certified copy of letter of administration, issued by the judge of probate for said county, dated August 4, 1868, appointing the plaintiff administrator with the will annexed, of William N. Roberts, deceased; also, certified copy of his bond as such administrator, filed August 4, 1868; also, certified copy of his petition to the judge of probate, dated September 2, 1873, praying that the estate of Adam Roberts might be administered as insolvent—received subject to the defendants' exception; also, decree of probate court, same date, that the estate of

Adam Roberts be administered as insolvent; also, the original petition, which reads thus :

"To the Hon. Judge of Probate for the County of Carroll :

"Respectfully represents Sanborn B. Carter, administrator of the estate of William N. Roberts, late of Tuftonborough, in said county, deceased, that the said William N. Roberts, in his lifetime, to wit, on the twenty-fifth day of June, A. D. 1868, did contract and engage, in writing, to convey to one Adam Roberts, of said Tuftonborough, upon the performance of certain conditions on the part of said Adam Roberts therein stated, certain real estate situated in said Tuftonborough, bounded and described as follows: Commencing at corner of land of Levi Brown, on south side of the highway leading from Tuftonborough to Water Village, and running westerly on said highway twenty-four rods, thence south, turning right angles, and running far enough into land of said William N. Roberts to contain one acre;—that the said William N. Roberts was prevented from making said conveyance by death, and that the said Adam Roberts stands ready to perform the conditions of said contract on his part. Wherefore your petitioner prays that he may be licensed to make and execute a conveyance of said real estate, agreeably to the statute in such case provided.

"Dated at Ossipee, the 1st day of January, A. D. 1869.

"ADAM ROBERTS."

The plaintiff testified that his name at the commencement of said petition was in his own handwriting, and that he wrote all of the petition excepting the signature of Adam Roberts at the end, which was in the handwriting of said Roberts. Upon cross-examination, he testified that he intended Adam Roberts should sign the petition, and that Roberts should petition the probate court instead of himself. The defendants objected to the reception of said petition, order of notice, and decree ; but the court permitted the plaintiff to read the same in evidence, and the defendants excepted. The defendants also excepted because no seal of the probate court was affixed to said decree. The plaintiff then offered a certified copy of the license granted by the probate court, which reads thus :

"State of New Hampshire—Carroll ss.

"[L. s.] The judge of probate for said county, to whom it may concern : Whereas, on examination, it appears that William N. Roberts, late of Tuftonborough, in said county, deceased, did in his lifetime contract by writing to convey to one Adam Roberts certain real estate, situated in Tuftonborough, bounded [description same as in above petition], upon certain conditions on the part of the said Adam Roberts which he has performed, or stands ready to perform, and that the said William N. Roberts was prevented from making said conveyance by death ;—therefore license is hereby granted to Sanborn B. Carter, administrator of the estate of the said William N. Roberts, deceased, to make and execute to the said          a good and valid conveyance of all the right, title, and interest that the said deceased had, at the time of his death, in and unto said real estate.

"In testimony whereof I have hereunto set my hand and the seal of said court of probate, at            , in said county, this second day of March, A. D. 1869.

"LARKIN D. MASON, Judge of Probate."

The plaintiff offered the deed from himself, as administrator of William N. Roberts, to Adam Roberts, executed in pursuance with the decree and license of the probate court. The defendants objected,—that he must first show that Adam Roberts complied with the terms of the contract. The plaintiff claimed that the probate court having authorized him by a decree and license to convey said premises to Adam Roberts, it was not open to the defendants in this suit to object to said conveyance; but the court ruled otherwise, and the plaintiff excepted.

The plaintiff then offered the original bond or contract from William N. Roberts to Adam Roberts. The defendants objected that there was only one subscribing witness to the bond. The plaintiff was allowed to read the same to the jury, and the defendants excepted. The plaintiff then offered the deed from himself to Adam Roberts.

It appeared in evidence that Adam Roberts was in possession of the premises in dispute when William N. Roberts died, and continued in possession up to the time of his own death. The estate of W. N. Roberts was decreed to be administered as insolvent at a court of probate, holden October 6, 1868, and the plaintiff has not yet settled his account as administrator of said estate. The defendant, Mary Jackson, was the widow of William N. Roberts, and is the wife of Matthew Jackson.

The plaintiff introduced evidence tending to show that one George O. Bean has lived upon the premises about one year as the tenant of the defendants; that Bean cut the grass upon the premises, July, 1874, by direction of the defendants,—but whether they gave such directions separately or jointly did not appear. The premises in 1874 were not taxed to the plaintiff, nor did he pay the taxes. Bean entered upon the premises without authority from or the knowledge of the plaintiff, and is not and never has been the tenant of the plaintiff.

The plaintiff claimed to hold the premises under the deed from W. N. Roberts's administrator to Adam Roberts; also, under the bond from W. N. Roberts to Adam Roberts; also, to hold as administrator of W. N. Roberts.

The defendants moved for a nonsuit, which was granted; and the plaintiff excepted.

The case was tried before SMITH, J., and the questions arising were transferred by him.

*S. B. Carter* and *Quarles*, for the plaintiff.

*J. H. Hobb* and *Copeland*, for the defendants.

*STANLEY, J., C. C.   It appears that the plaintiff is administrator

---

* SMITH, J., having presided at the circuit, did not sit.

of the estate of Adam Roberts ; that the estate is settled in the insolvent course; that Adam Roberts, up to the time of his death, was in possession of the premises under the bond or under the deed ; that, since the death of Adam Roberts, the plaintiff has not been in the actual occupation of the premises ; that, after the death of Adam Roberts, the defendants let in a tenant who had been in possession of the premises about one year previous to the trial ; that in July, 1874, the tenant cut the grass thereon, which is the trespass complained of.

Numerous objections have been taken to the plaintiff's title, and the regularity of the proceedings in the probate court ; but they cannot avail the defendants. It appears that the plaintiff's intestate was in possession of the premises previous to the death of W. N. Roberts, under the provisions of the bond given by him to Adam Roberts, which provided that, until the conveyance was made as stipulated in the bond, "Adam should have the right to occupy and improve the premises for his own use." This was a sufficient title to enable Adam, in his lifetime, to maintain trespass for any disturbance of his possession. After the death of William N. Roberts, his administrator attempted to convey the same, in accordance with the terms of the bond.

It is objected that there was but one witness to the bond: but this was not a fatal defect. The bond was simply an agreement for the conveyance of real estate ; and there is no provision of the statute or rule of the common law requiring any witness at all.

It is objected that the petition does not sufficiently set out the contract, and that it is not signed by the administrator of William N. Roberts.

The statute requires that "proceedings in the probate court shall be commenced by petition to the judge, briefly setting forth the ground of the application." Gen. Stats., ch. 173, sec. 1.

It appears from the case that the petition is in the handwriting of the administrator, and that his name was inserted in it in his own handwriting. The statute nowhere requires the petition to be subscribed by the petitioner, and I am of opinion that it was sufficiently signed by him. So, too, the substance of the contract was sufficiently set out. The law does not require that all the minute details of the contract shall be specified. It is enough if the substance of the contract were set out,—and this, the petition shows, was done. It is objected that the license is defective, in not stating the party to whom the administrator was to make the conveyance ; but this objection cannot be sustained. "Certum est quod certum reddi potest." The decree shows that license was granted " to Sanborn B. Carter, who was the administrator of William N. Roberts," to convey the premises. The license recites that " whereas, on examination, it appears that William N. Roberts, of, &c., deceased, did in his lifetime contract by writing to convey to one Adam Roberts certain real estate, &c., upon certain conditions on the part of the said Adam Roberts, which he has performed, and that he stands ready, &c. ;—therefore license is hereby granted to Sanborn B. Carter, &c."

It is evident from the decree to whom the conveyance was to be made; but if the objections taken to the regularity of the proceedings in the probate court were tenable, they cannot avail the defendants, because the case shows that the plaintiff claims under the bond as well under the deed; and if the deed is invalid, the bond is not, and the administrator may still claim under it.

Another objection raised is, that the plaintiff cannot maintain trespass because he was not in possession at the time of the commission of the alleged trespasses; but this objection must fail. The case shows that Adam Roberts, the plaintiff's intestate, was in possession of the premises up to the time of his death, but that the plaintiff has never been in the actual possession.

The gist of the action of trespass *quare clausum fregit* is an injury done to the plaintiff's possession of real property. In order, therefore, to maintain it, the plaintiff must either have or be entitled to have possession of the property in which the trespass is alleged to have been committed.

This principle is said by FOWLER, J., in *Richardson* v. *Palmer*, 38 N. H. 212, " to be so well settled as to need no argument or citation of authorities." Adam Roberts being in possession at the time of his death, his administrator—the estate being settled in the insolvent course on the decree of insolvency—became entitled to the possession; and therefore an entry by the defendants, or by their order, was a disturbance of that possession.

It is further objected, that the action cannot be sustained against the defendants because they are husband and wife; but this objection is not well founded. In actions of trespass, both may be sued for their joint acts; and for assaults and other wrongs where two may concur, the husband and wife may be sued jointly for the act of both. 2 Saunders on Pl. and Ev. 195; 1 Stephens's Nisi Prius 746,—title, Baron & Feme; 1 Selwin's Nisi Prius 239.

The case shows that Bean, who was in possession, and who cut the grass in question, was the tenant of the defendants, and that they gave directions to him to cut it. His act, therefore, was the joint act of both, and the action was well brought. It is suggested in the argument, that the evidence does not show that Bean entered under the authority or by the request of the defendants, but it does distinctly appear that he was in as the tenant of the defendants; and the fair and reasonable inference is, that his entry was by the direction of the defendants,—and that entry being unlawful, the defendants, by his act as their servant and tenant, became and were trespassers. Entertaining these views, the nonsuit must be set aside, and the cause stand for trial.

CUSHING, C. J. In *Bergin* v. *McFarland*, BELL, J., after stating that at common law the estate vested at once in the heirs, and that all which the administrators and executors could do with real estate was to sell by license for the payment of debts, and that until the estate

was thus taken from them, the heirs had a right to the possession of the property, proceeds as follows : "An important change was made in these respects by the statute of 1829, substantially reënacted in the Revised Statutes. It is there provided that the administrator shall receive the rents and profits of the real estate in case the estate is insolvent, and shall keep the same in repair, and shall account for the net proceeds thereof in his administration account—ch. 159, sec. 10 ; and the administrator may, as such, maintain any action necessary and proper to be brought, in relation to the real estate of the deceased, in cases of insolvency, until the administration is closed—ch. 161, sec. 9." 26 N. H. 537.

By the statute of July 2, 1822, Laws of 1830, p. 359, provision was made for the settlement of insolvent estates, " when the estate of any person deceased shall appear to the executor or administrator thereof to be insolvent, and shall be so represented to the judge of probate, and be decreed by him to be administered upon as an insolvent estate," &c.

By the statute of 1829, it is enacted that " It shall be the duty of every executor or administrator of every estate which shall be hereafter administered upon as an insolvent estate, and he is hereby authorized and required, to keep in repair and receive the rents and profits of any real estate in this state which may belong to such testator or intestate at the time of his decease." Laws of 1830, p. 370.

By Rev. Stats., ch. 162, sec. 1, it is provided that the estate of any person deceased may be decreed to be administered as an insolvent estate.

By Rev. Stats., ch. 159, sec. 10, " The administrator shall receive the rents and profits of the real estate in case the estate is insolvent, and shall keep the same in repair, and shall account for the net proceeds thereof in his administration account."

It thus appears that the settlement of estates in what is called " the insolvent course " had been provided for by statute before it was made the duty of the administrator to have possession of the real estate and take the rents and profits. The term " insolvent course " was used to describe the proceedings by which the debts were proved, the dividend declared and allowed, and, generally, the closing up of the affairs of the estate. The provision that the administrator should take the rents and profits, &c., was a separate matter, and introduced afterwards.

Under these statutes, as no estate was to be settled as insolvent excepting on the representation of the administrator that it appeared to him to be insolvent, it might well be presumed, on the decree of the judge of probate having been made, that the estate was insolvent, and no inconvenience or hardship need have been apprehended by so treating it.

When, however, it was provided by the Revised Statutes that any estate, however large it might be, and however otherwise situated, might be decreed to be settled as insolvent, the terms employed were

different. Instead of providing that the administrator shall take the rents and profits when the estate is decreed to be *settled as insolvent,* it was provided that the administrator might do this when the estate was *insolvent.*

It seems impossible that this change should have been accidental. When the statute contemplated that no estate should be settled as insolvent unless there was reason to believe that it was so, it was natural that the same terms should be used in regard to the administrator's possession of the real estate; but when it was provided that all estates might be settled in the insolvent course, the administrator's right to the possession of the real estate was limited to the cases where the estate was insolvent.

This seems so clear, when the different statutes are compared and the history of the legislation attended to, that it seems strange that it should ever have been lost sight of.

I understand, however, that for the convenience of adjusting claims against estates and relieving the administrator from responsibility, a loose practice had prevailed, before the time of the Revised Statutes, of representing estates insolvent by administrators who knew they were not so, and of decreeing them to be settled as such by judges of probate without any proof that they were so; and out of this custom grew the other,—of presuming estates to be insolvent when they were settled as such, although they were known not to be so.

But under the provisions of the Revised Statutes, substantially re-enacted in the General Statutes, it is difficult for me to see how the mere decree that the estate shall be settled in the insolvent course should have the effect of ousting the heirs, and entitling the administrator to the possession of the real estate; and I cannot help thinking that the change in the terms of the law, by which the administrator was required to take the rents and profits, was made deliberately, and with the intention of preventing such result. The matter, however, does not appear to have been a subject of much discussion, nor of any direct decision by the court.

In *Plumer* v. *Plumer,* 30 N. H. 568, it was held that the fact that a solvent estate is settled in the insolvent course does not prevent an heir from maintaining an action for an injury to the realty, or for incidents removed therefrom, if it appear that the real estate is not required for the payment of debts or the expenses of administration.

EASTMAN, J., in the course of his opinion, says,—" Upon the whole, we think there is no difficulty in sustaining the suit, upon the ground of want of title in the plaintiffs. The premises belonged to them, as heirs of their father; and, in the absence of its appearing that they were wanted for the payment of his debts, it is to be taken that they were not wanted. The plaintiffs were in possession of the premises as heirs, and, without claim from any one, rented the same to the defendant, who, it would seem, is not in a position to dispute their title." *Plumer* v. *Plumer,* 30 N. H. 567.

In *Leavitt* v. *Leavitt*, 47 N. H. 329, the husband in his lifetime had made a voluntary conveyance to his wife, who was the plaintiff; and the defendant, who was in possession, amongst other defences, claimed that he was executor of his father's will, that the estate was decreed to be settled in the insolvent course, and that the personal property was not sufficient to pay the debts. It was held that this did not entitle him to hold the possession. BELLOWS, J., in his opinion, speaking of the law in regard to the settlement of insolvent estates, says,—" The provisions of that law are, that the administrator shall receive the rents and profits of the real estate, in case the estate is insolvent; but the proof offered is not that the estate is actually insolvent, or even that any part of the land in question is needed to pay the debts, but simply that the personal estate was insufficient.

" For some purposes, the decree of insolvency is conclusive, as it would be in determining the mode of proving claims against the estate. *Judge of Probate* v. *Brooks*, 5 N. H. 82; *Ticknor* v. *Harris*, 14 N. H. 272. In other cases it has been held not conclusive, as in *Plumer* v. *Plumer*, 30 N. H. 558, where it was decided that where an estate was settled in the insolvent course, but was actually solvent, and the real estate not needed to pay the debts, the heir might maintain an action for an injury to the realty or its incidents;—in this case the recovery was for the taking of manure." *Leavitt* v. *Leavitt*, 47 N. H. 334.

In *Baker* v. *Haskell*, 48 N. H. 426, it was held that one heir may maintain an action against another heir to recover damages for his exclusion from the realty during the time the ancestor's estate was in process of administration in the insolvent course, if the administrator never had possession of the realty, and the debts have all been paid by the sale of other property, and the administrator's account has been settled.

In his opinion, SMITH, J., says,—" The object of the legislation, entitling the administrator to receive the rents and empowering him to bring suits respecting the realty, was, to protect the rights of creditors, not to harass the heirs, or allow them none but dilatory or expensive remedies; and, under the circumstances of the case, the spirit of the statute is not violated by allowing the plaintiff to recover directly the rents, which, it is apparent, are not needed for the payment of debts, for which purpose they originally constituted a reserve fund." *Baker* v. *Haskell*, 48 N. H. 428.

In *Goodwin* v. *Milton*, 25 N. H. 458, the head note is,—"Where land belonging to an insolvent estate is taken for a highway, an award of damages is properly made to the administrator of the estate, and not to the heirs." But, in the opinion by EASTMAN, J., the case is put upon the broad ground that on the estate being decreed to be administered as an insolvent one, the presumption of law is that it is insolvent, and that there is not sufficient property belonging to the same to pay the debts. It does not appear from the case whether the estate was actually insolvent or not; but the decision is put upon the broad ground that it is immaterial.

In *Plumer* v. *Plumer*, above cited, the dictum is that in the absence of proof that they *(i. e.,* the premises in dispute) were wanted for the payment of debts, it is to be taken *(i. e.,* the presumption is) that they were not wanted. It is true that these remarks are to be taken with reference to the subject-matter; but it is equally true that the presumption of law cannot be both ways.

I have thus brought together some of the most noticeable utterances of the court in regard to this matter. Each one, of course, is to be taken in connection with the circumstances to which it is applied; but I confess it seems to me that, in any way in which they can be viewed, they do by no means come up to the doctrine that the mere fact that an estate is decreed to be settled as insolvent shall be held to control the legislation on that subject, and furnish a conclusive presumption that the estate is insolvent, and that all the real estate must, without reference to the necessities of the case, be taken from the heirs or devisees, and pass into the hands of the administrator to be managed at the expense of the heirs, who ought, themselves, to have the management and care of it and enjoy its profits. I think there can be no general and overruling necessity which requires such a forced construction.

Still less does it follow that the mere fact than an estate is decreed to be settled as insolvent should be held sufficient to authorize the administrator to involve the estate in the expense of lawsuits at his discretion.

According to the theory of *Goodwin* v. *Milton*, a lawsuit of comparatively insignificant importance might keep the estate for a long time in the hands of the administrator.

Perhaps it would not be an unreasonable conclusion, from the cases cited, that the decree that an estate should be settled as insolvent should be held to furnish a presumption of fact,—*i. e., prima facie* evidence that it was insolvent,—and that this presumption might be rebutted. If this be so, the plaintiff in this case stood well enough until this presumption had been destroyed; and for this reason I think the nonsuit cannot stand.

Ladd, J. I agree with with my brother Stanley, that none of the exceptions with respect to the proceedings in the probate court, and the execution of the deed by Carter, as administrator of Wm. N. Roberts, to Adam Roberts, are well founded; and, so far, I do not understand there is any difference of opinion in the court.

The case then is, that Adam Roberts died seized of the *locus in quo;* that his estate had been decreed to be administered as insolvent before the act complained of, and that the administration was not at that time closed. It does not appear that the plaintiff was ever in possession of the land, either as administrator or otherwise; neither does it appear whether the estate is actually insolvent, nor whether this land is necessary to pay the debts. The defendants show no right, and their act was clearly a trespass. The question is, whether, upon the facts

stated, the administrator of Adam Roberts can maintain trespass *quare clausum fregit* against them for it. I think he can.

" The administrator, as such, may maintain any action necessary and proper to be brought in relation to real estate of the deceased in cases of insolvency, until the administration is closed." Gen. Stats., ch. 179, sec. 19.

" The administrator shall receive the rents and profits of the real estate in case the estate is insolvent, and keep the same in repair, and account for the net proceeds thereof in his administration account." Gen. Stats., ch. 177, sec. 11.

" The estate of any person deceased may, on application of the administrator, be decreed to be administered as insolvent." Gen. Stats., ch. 180, sec. 1.

The argument, as I understand it, is, that, by the true construction of these statutes, the administrator is to recover the rents and profits and maintain actions, as provided in the two sections first above quoted, only when the estate is actually insolvent. If this be so, an inquiry of no inconsiderable practical importance seems to arise as to how it is to be ascertained whether the estate is or is not actually insolvent, in season so that the rights and interests of all the parties concerned may be secured. The statute seems to be imperative, that in case the estate is insolvent the administrator " shall " receive the rents and profits. How often does it happen that considerable time must elapse before it can be determined with any degree of certainty whether there is property enough to pay all the debts and expenses of administration? It may and often does happen that this fact cannot be fully determined until all the land has been sold : what is the situation of things in the meantime ?—what the duties and liabilities of the administrator with respect to the rents and repairs of the real estate ? Suppose the administrator, in the exercise of his best judgment, comes to the conclusion that by selling all the land there will be property enough to pay the debts and expenses of administration, and little or nothing over,— that is, he thinks the estate is barely solvent ; and suppose, at the same time, it is obvious from the situation of the personal estate that the administration cannot be closed for a considerable length of time,— years, perhaps : are the heirs to go into possession and take the rents and profits ? and are the hands of the administrator tied as to any efficient action in the interest of the creditors, for the protection of the real property, until the other affairs of the estate are brought into such shape that a license to sell the land may be obtained ? In the case supposed, the administrator at once applies for and obtains a decree that the estate be administered as insolvent : the heirs may be numerous and widely scattered ; their rights in and title to the land are subject to be divested by a sale under a license from the probate court for the payment of debts : was it the intention of the legislature that the administrator should be embarrassed in the performance of his office, and the estate be left in such situation that no one has a legal duty or a sufficient legal right or interest to look after and care for it during

the time that must elapse before a license to sell can be procured ? It seems to me it would require language very explicit and clear of doubt to warrant the inference of a legislative intent likely to produce results so inconvenient and absurd.

The statute is, that, on the application of the administrator, any estate may be decreed to be administered as insolvent. What does this mean ? An estate which is in fact insolvent, is administered in a certain way ; and one of the circumstances of such administration is, that the administrator takes the rents and profits of the land, and may maintain any action necessary and proper to be brought in relation to it. When the legistature enact that an estate, not in fact insolvent, may be decreed to be administered *as insolvent,* what can they mean unless it be that such estate may be administered in the way insolvent estates are administered ? Upon what ground or by what warrant can the court say they meant it should be administered in the way estates actually insolvent are administered so far as regards the proof and collection of claims against it, but not in the way estates actually insolvent are administered in respect of the control and management of the land ? I confess it is impossible for me to draw any such line ; and I see no practicable way in which the statute can be interpreted and applied but to hold that it means what the terms in which it is expressed seem plainly to import, namely, that, when a decree is obtained that an estate be administered as insolvent, it is to be administered in the way insolvent estates are administered, and that this has reference to the whole of the estate, real as well as personal. By such a construction the duty of the administrator is made plain, and all conflict and contention between him and the heirs as to whether the estate is actually insolvent or not is avoided.

I have examined all the cases to which reference has been made without finding anything in either of them which, in my judgment, conflicts with this view, while there is certainly much in the cases of *Lane* v. *Thompson,* 43 N. H. 320, *Lane* v. *Thompson,* 43 N. H. 326, *Baker* v. *Haskell,* 48 N. H. 426, *Bergin* v. *McFarland,* 26 N. H. 533, *Moulton* v. *Wendell,* 37 N. H. 408, *Goodwin* v. *Milton,* 25 N. H. 458, and probably others, to sustain it.

But it is not necessary to go so far as this in the present case. If we should admit that there may be cases where an estate is settled as insolvent, in which, before the close of the administration, the administrator could not maintain trespass against a stranger and a mere wrong-doer for an entry upon the land of his intestate, still it seems to me clear that the burden must be on him who undertakes to set up such facts in his defence to show them. We need go no further now than to hold that, in the absence of any facts to show that this action cannot be maintained in the name of the administrator, the decree that the estate be administered as insolvent gives him, *prima facie,* a sufficient title to maintain his suit ; and I am of opinion that it must be so.

*The plaintiff's exception must be sustained, and the order of nonsuit*
*taken off.*