## Abigail Leavitt *v.* John Leavitt.

The deed of the husband in consideration of love and affection, in which he covenanted to stand seized of a farm to his own use during his life, then to the use of his wife during her life, and then to the use of the son, the defendant, forever, is good to vest the estate in the wife on the death of the husband.

Upon the death of the husband his administrator is not entitled to the possession of the farm as against the wife, unless the estate be actually insolvent; and a decree of insolvency alone is not sufficient.

Such a settlement is good, if the covenantor was not embarrassed, but retained ample means to pay all his existing debts, and it was made in good faith; and, therefore, the administrator will not be entitled to dispossess the wife, by showing a decree of insolvency; that some debts due when the deed was made had been presented against the estate; and that the personal estate is not sufficient to pay all the debts.

A verbal agreement between the wife, after the husband's death, and her son, that they shall live together on the farm during her life, and that he shall carry it on, and that they shall pay the debts of the estate; and an entry and possession by him under such agreement, creates a tenancy at will, from year to year.

Therefore, a notice to quit of less than three months is not sufficient to terminate such tenancy.

The notices prescribed by the act known as the landlord and tenant act, are intended to take the place of those required at common law; and apply in actions at common law equally as in proceedings under that statute.

A notice not naming the day when the tenant is required to yield up the possession, seems not to be in accordance with the statute.

Writ of Entry. Writ dated March 26, 1866, and served same day. By agreement of parties the case was tried by the court, and the following facts were found:

Plaintiff is mother of defendant, and widow of John Leavitt, the father of defendant. Plaintiff's husband died in July, 1865, leaving a will of personal property, and appointing defendant executor. September 16, 1861, he had executed a deed "in consideration of the love and affection which I bear to my wife, Abigail Leavitt, and to my son, John Leavitt, Junior," whereby for himself and his heirs, he covenanted, granted and agreed to and with the said John Leavitt, Jr., and his heirs, that he would thenceforth stand and continue seized of and in his homestead farm, (together with the dwelling house and other buildings thereon,) "for the uses, intents and purposes following, that is to say, to my own use during my natural life, without impeachment of waste; after my decease to the use of my said wife, Abigail Leavitt, during her natural life, without impeachment of waste; and, after her decease, to the use of John Leavitt, Junior, his heirs and assigns forever."

The demanded premises were said homestead farm.

March 6, 1866, plaintiff notified defendant in writing to leave said homestead. A petition to represent the estate insolvent was dated April 3, 1866, and the estate was decreed to be represented as insolvent April 4, 1866.

Defendant offered to prove that, after the decease of his father, it was verbally agreed by him and plaintiff that he should live upon the farm and carry it on, that they should constitute only one family during their lives, and that they would pay the debts due from the estate; that defendant paid some portion of the debts, and continued to reside on the

farm under said agreement until March, 1866, when plaintiff refused to carry out the agreement, and brought this action ; that defendant, that month, gave bond and took upon himself the trust as executor of the will, and a commissioner was appointed ; that claims have been presented against the estate, due both before and after the date of the deed ; that the personal estate is not sufficient to pay the debts.

The court, *pro forma*, excluded the evidence offered by defendant, and found the conclusion of law upon the whole case to be that the defendant did disseize the plaintiff in manner and form as the plaintiff hath thereof declared against him, and defendant excepted.

*Stickney*, for plaintiff.

The plaintiff, at the death of her husband, was entitled to the possession of the demanded premises ' by virtue of his deed dated Sept. 16, 1861.

On the 6th day of March, 1866, the plaintiff notified the defendant in writing to leave said premises immediately, as she wanted the same for her own use ; and upon his refusal to leave, on March 26th she commenced this action against him, which she is entitled to maintain, unless the defendant has acquired in some way a right to the possession as against her.

The facts, which the defendant offered to prove, do not amount to a defence, and would not, if proved, show any right in the defendant to hold possession of the premises against the plaintiff.

By the statute, sec. 12, p. 290, Comp. Stats., "every estate or interest in lands, created or conveyed without an instrument in writing, signed by the grantor or his attorney, shall be deemed an estate at will only."

Admitting that the plaintiff made the agreement with the defendant, which he offered to prove, and that he was in possession of said premises under that agreement, yet there was no instrument in writing, and he was in possession only as a tenant at will, which the plaintiff could determine at any time, and the said notice in writing of March 6th put an end to his tenancy, and he had no right to remain there any longer against her will. No particular time was required to be given, as the plaintiff did not desire to avail herself of the landlord and tenant act, but preferred to pursue her remedy at common law by writ of entry.

There is another fatal objection to this part of the defendant's evidence, and that is, that such evidence is not admissible under the pleadings. This case is tried as upon the general issue, no special plea having been filed. If the defendant is tenant under the plaintiff, he should have pleaded *non tenure*. By the plea of *nul disseizin* he admits himself in possession claiming a freehold, and cannot offer any evidence showing that he is tenant at will or for years, because that would directly contradict his plea. *Williams* v. *Noiseux*, 43 N. H. 388.

The other facts, which the defendant offered to prove, that he was executor, that a commissioner was appointed, and debts before and after

said deed presented, and that the personal estate is insufficient to pay the debts, do not amount to a defence.

A perfect answer to this part of the defence is that the testator did not die seized of the demanded premises, but had conveyed the same away in his life time. The executor therefore, as such, had no right to enter upon said land, even if said conveyance were fraudulent and void as to creditors. The grantee would hold the land by the deed until it was taken from him by some legal process. *Jones* v. *Bryant*, 13 N. H. 53.

If the personal estate in such case should be insufficient to pay the debts, the proper course, and we think the only course, for the executor to take, would be to apply for and get license to sell real estate sufficient to pay the debts, and then by virtue of that license sell so much of the real estate fraudulently conveyed, as might be necessary for that purpose. The purchaser would then be in a condition to test the validity of the conveyance. This is believed to be the usual course of proceeding in such cases. *Kingsbury* v. *Wild*, 3 N. H. 30.

If the testator had died seized of the real estate, we contend that the executor would have had no right to enter upon it, unless it was necessary to be taken to pay debts, in which case he might obtain license and sell so much thereof as might be necessary for that purpose. An administrator may take the rents and profits of the real estate, where the estate is actually insolvent. Sec. 10, p. 407, Comp. Stats. In this case at the time when the action was commenced, the estate had not been represented insolvent, and consequently the defendant as executor had no more right to continue in possession of the premises against the will of the plaintiff than any stranger. The action is to be tried according to the rights of the parties at the time it was commenced. Matters of defence, arising after the commencement of the action, cannot be given in evidence under the general issue, but must be pleaded specially against the further maintenance of the action. 1 Chitt. Plead. 651.

But if the estate had been represented insolvent before the commencement of the action, that would not, as we think, give the defendant a right to hold the land against the plaintiff, even if there was not personal property enough to pay the debts. The deed conveys the demanded premises to the plaintiff for life, and then to the defendant in fee. Each party, having an interest in this real estate, is bound to contribute in proportion to his interest towards paying any incumbrances or demands upon it. If such demands are not otherwise settled, it would be the duty of the executor to obtain license and sell so much of the real estate, as might be necessary to pay them. In this way each party would pay his just proportion of the debts, but if the defendant can hold the whole real estate and take the income thereof until all the debts are paid, it would be making the plaintiff, in fact, pay all the debts, as that income belongs to her, and the defendant would pay nothing, which would be unjust.

How the defendant proposed to prove that the personal estate was insufficient to pay the debts, he does not state. The whole amount of the debts allowed by the commissioner was only about $132, and all those

debts accrued since the date of said deed except one small note of $10, dated in August, 1861. The amount of the personal estate, according to the inventory returned by the defendant, is $283.52. There may be some expenses of administration, but I should think not equal to the excess of the personal estate above the debts.

We deny that this real estate is holden to pay the debts. The deed was executed in good faith, without any intention to defraud creditors. The grantor had other property sufficient to pay all his debts. The deed was put on record on the day of its date, and the land conveyed cannot be taken to pay any debts, and certainly not those which accrued subsequently.

*Wood*, for defendant.

The defendant, as administrator, must take the profits and have control of the farm, the estate having been rendered insolvent. Comp. Laws, p. 403, sec. 10.

The deed is invalid, certainly, as to the debts due at the time of its execution; and the defendant must treat the transaction as if no deed had been executed. *Goodwin* v. *Milton*, 25 N. H. 474.

If the defendant occupies as tenant at will, then the notice was not sufficient; no day is mentioned in the notice, and the time was too short. Comp. Laws, p. 534, sec. 1207; *Currier* v. *Perley*, 24 N. H. 228.

The case was not tried on the general issue; the defendant had the benefit of all the facts.

As the estate is insolvent the defendant must account for the profits of the farm, and the testimony offered by defendant was admissible.

BELLOWS, J. The grounds of defence relied upon, arise from the evidence offered by the defendant to show, in him, as executor of an insolvent estate, a right to the possession of the demanded premises, or else that he was a tenant at will, and entitled to notice to quit.

Upon the first point the defendant proposed to prove, that claims have been presented to the commissioner of insolvency against said estate, due before and after the date of the deed under which the plaintiff claims, and that the personal estate is not sufficient to pay the debts; and the defendant urges that under such circumstances the deed is invalid to convey the estate to plaintiff as against creditors existing at the time, or as against the defendant as their representative.

On this point the case of *Pomeroy* v. *Bailey*, 43 N. H. 118, would seem to be decisive. It was there held that a voluntary conveyance for the consideration of natural love and affection, made by a person not embarrassed at the time, but retaining ample means to pay all his existing creditors, is good; unless it be made to appear that such conveyance was not *bona fide*.

In the case before us, we have a voluntary settlement made upon consideration of natural affection, which is a good, though not a valuable consideration, and there is nothing in the proofs offered that impeaches the good faith of the settlement. It is proposed to show that some

claims were presented against the estate that were due when the deed in question was made, and that the personal property is not now sufficient to pay all the debts; but it is not proposed to show that ample means were not retained to pay all the debts then due; or that the deceased was then embarrassed; or that the settlement was not made in good faith; neither does he propose to prove that this real estate is needed to pay the debts, or that the personal estate with the other real estate, is not sufficient. This being the case, we are satisfied that the proof offered would not affect the validity of the settlement, and therefore would be no defence.

Besides, it is by no means certain that the defendant could in this mode impeach the settlement, even if it were made in bad faith, and therefore void as to creditors. In *James* v. *Bryant*, 13 N. H. 53, it was decided that the creditors of a fraudulent grantor had no right to enter upon the land and take the profits before they had extended their executions upon it, and that until then, the grantor was lawfully in possession and taking the profits; and this is upon the ground, that, as between the parties, the conveyance is good, and confers upon the grantee the title until defeated by levy of execution.

The administrator of such grantor represents both the heirs and creditors. As the representative of the former he cannot impeach the conveyance. As the representative of the creditors he might, probably, in their behalf, bring a suit in equity to set aside a fraudulent conveyance, and perhaps after proof of the claims of the creditors who are entitled to impeach the conveyance, he may obtain a license and sell the entire estate disregarding such fraudulent conveyance, and thus confer upon the purchaser the right to contest it. Such at least seems to be the doctrine of *Kingsbury* v. *Wild*, 3 N. H. 30; and so it is held in *Drinkwater* v. *Drinkwater*, 4 Mass. 354. If the latter course can be adopted at all, it must be as a substitute for the levy and sale on execution during the life of the grantor; and it would seem from recent decisions that the sale should be of the entire property, and not merely the interest of the deceased at his death.

See *Bean* v. *Bracket & al.*, 34 N. H. 102, 122, where it was decided that on a sale by an assignee in bankruptcy the purchaser must take the property subject to any incumbrance that the assignee has not chosen to avoid. A similar doctrine is held in *Flanders* v. *Jones*, 30 N. H. 155. There a creditor had caused to be sold upon execution his debtor's equity of redemption in certain real estate, and the sheriff's deed purported to convey all the right which the debtor had, at a certain date, to redeem the land. The court decided that the purchaser under these circumstances could not impeach one of the mortgages referred to in the officer's return. That the creditor might, if he chose, treat such mortgage as valid; and if he did so, and sold only the debtor's right of redemption, the purchaser would take that alone, and could not defeat the mortgage by alleging that it was fraudulent.

The case of *Brewer* v. *Hyndman*, 18 N. H. 9, lays down the same principle, and so is *Russell* v. *Dudley*, 3 Met. 149. If, then, the creditor proposes to avoid such a conveyance he should do so before a

sale, either by extending his execution upon the whole land, disregarding the mortgage, or if there be, as in *Flanders* v. *Jones*, one valid mortgage which makes a sale of the equity necessary, then by selling it subject to that only, and in the notices, sale and deed, so representing it.

From these cases it would seem that an administrator might, in proper cases, sell so much of the real estate of the deceased as was necessary to pay debts, and give to the purchaser the right to avoid a fraudulent conveyance, taking care to sell and convey the entire estate, and not subject to such fraudulent conveyance.

It is, however, another question whether the administrator is entitled to possession, and to receive the rents and profits, when, as in this case, the estate had vested in another by a conveyance which was valid against the intestate and his heirs. If, in any such case, he would be entitled to enter and take the profits, it would be only where proper steps had been taken to avoid the conveyance in behalf of the creditors, and where the circumstances were such in respect to the character of the conveyance, and the condition of the deceased's estate, as to entitle him to avoid it. Unless such circumstances are shown, the grantee is entitled to hold the estate, and his possession ought not to be disturbed.

In this case the mere proof of insolvency would not be sufficient to defeat the plaintiff's title; and besides, it is by no means clear that the decree of insolvency, even if it had been prior to the bringing of this suit, would have been, as against this plaintiff, proof of actual insolvency within the meaning of the Compiled Statutes, ch. 168, sec. 10.

The provisions of that law are, that the administrator shall receive the rents and profits of the real estate, in case the estate is insolvent; but the proof offered is not that the estate is actually insolvent, or even that any part of the land in question is needed to pay the debts, but simply that the personal estate was insufficient.

For some purposes, the decree of insolvency is conclusive; as it would be in determining the mode of proving claims against the estate. *Judge of Probate* v. *Brooks*, 5 N. H. 82; *Ticknor* v. *Harris*, 14 N. H. 272. In other cases it has been held not conclusive, as in *Plumer & al.* v. *Plumer*, 30 N. H. 558, where it was decided that where an estate was settled in the insolvent course, but was actually solvent, and the real estate not needed to pay the debts, the heir might maintain an action for an injury to the realty or its incidents; in this case the recovery was for the taking of manure.

For a much stronger reason ought a grantee, who holds by a title from the deceased which is good against him and his heirs, be allowed to retain possession of the land when the estate is not in fact insolvent; because, if the income goes into the account of the administrator, it may be distributed among the heirs, who, as between them and the grantee, would not be entitled to it.

There are other serious difficulties in the way of this defence. It does not appear that the defendant had ever, before the suit was brought, entered upon the land as executor, or had in any way attempted to avoid the deed. On the contrary, it seems that he considered himself and the

plaintiff in the joint occupation of the farm by agreement under the deed in question.

No objection is made to the operation of this deed in respect to the wife, and it seems that none could be made successfully, it being held that by a covenant of the husband to stand seized of lands to the use of himself for life, remainder to his wife for life, and remainder to his two sons in moities, a use will arise to the wife without any consideration expressed. *Bedell's Case*, 7 Co. Rep. 40; 4 Greenl. Cruise's Dig. 109, secs. 16 and 17, and cases cited; note D. to *Mildmay's Case*, 1 Co. Rep. 175, and cases; *Milbourne & ux.* v. *Simpson*, 2 Wils. 22; 2 Blk. Com. 338, note 62.

As to the proof offered by defendant of a tenancy at will, it is clear that such a defence could not come in under the general issue, and was therefore rightly excluded as the pleadings stood at the time of the trial; but a plea of *non tenure* special having since been filed by the agreement of parties, it becomes necessary to consider the merits of that defence.

The substance of what was offered, was an agreement between the plaintiff and defendant, that he should live upon the farm and carry it on, that they should constitute one family during their lives, and that they would pay the debts due from the estate; that under this agreement the defendant continued to reside on the farm until March, 1866, having paid some portion of the debts, and that plaintiff then refused to carry out the said agreement.

This evidence we think was competent to prove a tenancy at will, created by parol. It tends clearly to show that the defendant was in possession by permission of the plaintiff, and whether any rent was reserved or not, the defendant must be regarded as tenant at will. *Wight* v. *Beard*, 13 East. 210, *Jackson* v. *Aldrich*, 13 Johns. 112, where it is said by *Spencer, J.*, that whenever the relation of landlord and tenant exists, or whenever it can be shown that the defendant entered lawfully into possession, and by the permission of the owner, and has done no act hostile to him, he cannot be treated as a trespasser and subjected to an action of ejectment without notice to quit, or a demand of possession. So are Taylor on Land. & Tenant, sec. 60; Tillinghast Adams on Eject. 107; *Jackson* v. *Rowan*, 9 East. 330; Wash. on Real Prop. 376, secs. 25, 26.

So, when a person has been put into possession under a contract to purchase which he stands ready to perform. *Jackson* v. *Rowan*, 9 East. 333; Taylor Land. & Ten. sec. 60; Tillinghast Adams on Eject. 107; *Newby* v. *Jackson*, 1 B. & C. 448; 1 Greenl. Cruise's Dig. Tit. 9, sec. 3.

In the case before us the proof offered would tend to show that defendant went into possession of the farm with the permission of the plaintiff, upon a verbal agreement for a permanent occupation by him, which she afterwards refused to execute, and we think the authorities are clear that this would constitute a tenancy at will; and it would be the same, we think, if it were found that there was to be a joint occupation by the parties.

The question then arises, whether the tenant was entitled to notice to quit before a writ of entry could be maintained against him.    It is clear that before such a suit, a tenancy at will  must in some  way  have been terminated, and the question how it could be done involves the construction of some provisions of our statute, known as the landlord and tenant act.

Sec. 1 of ch. 209, Rev. Stats. provides that "any lessor or owner of any lands or tenements may at any time determine any lease at will or tenancy at sufferance, by giving to the tenant or occupant a notice in writing to quit the same at a day therein named ;" and the question arises whether this mode of determining such tenancy excludes, by necessary implication, all other modes by notice.

In deciding this question it becomes necessary to consider the state of the law upon this subject, prior to the act under consideration.    That act, it will be perceived, was but a revision of the law of July 1, 1831, entitled "an act providing further remedies for landlords and tenants," and without any material change, so far as this question is concerned.

A short time before this, a similar law was enacted in Massachusetts Statutes, 1825, ch. 88, sec. 4, providing as ours does, that "all leases at will and tenancies at sufferance," "may be terminated by either party after giving to the other party three months notice ;" and when the rent is "due and payable more frequently than quarterly the notice shall be sufficient, if it be equal to the interval between the times of payment thereof."    But if the payment of rent due and in arrear is neglected or refused, fourteen days notice to the tenant or occupant shall be sufficient.

The provisions of our statute of July 1, 1831, before cited, are, as will be seen, almost identical with those of the Massachusetts act ; except in case the rent is in arrear, seven days notice only is required by our law, instead of fourteen, as required by the Massachusetts act.    But there can be no doubt that our statute was copied substantially from that of Massachusetts.

Previous to the passage of this Massachusetts act, there had been much discussion and doubt in that State, upon the question whether a notice to quit was necessary in any case to determine a tenancy at will, and in *Ellis* v. *Paige*, 1 Pick. 43, it was decided that a tenant at will was not entitled to notice to quit, although allowed a reasonable time to remove his family and property ; and this doctrine was applied to a parol letting for one year reserving rent, the court holding that the law of the English courts, giving to a parol lease for an uncertain time but reserving an annual rent, the effect of a lease from year to year, did not apply to parol leases under the Massachusetts statutes of 1783, upon the ground that in *that* statute the exception in favor of parol leases not exceeding three years, contained in the English statute of 29 Car. 2 c. 3, was omitted.

The opinion of the court was delivered by *Wilde, J.*, but, as appears in a note to *Coffin* v. *Lunt*, 2 Pick. 71, *Putnam* and *Jackson, JJ.*, dissented, and *Putnam* gave an able and searching opinion, in which he maintained with great force, that the law of the English courts was not

based at all upon the exception in the statute of 29 Car. 2, c. 3, but upon broad principles of justice and public policy, which forbid the determination by the landlord, of a parol lease from year to year, without that reasonable notice which would enable the tenant to obtain the fruits of the labor he had expended, upon the faith of his landlord's agreement. So it is laid down in 4 Kent's Com. sec. 116, and he came to the conclusion that the tenant at will was entitled to such reasonable notice, and that what was reasonable notice was a question of law to be determined by the court, holding that so far as it has already been settled by judicial decisions what is reasonable notice, the court there ought to be bound by it.

At the same time, *Wilde, J.*, in delivering the opinion of the court, recognizes the difficulty of laying down rules to govern each particular case as it arises, and suggests the expediency of legislation on the subject, and hence, probably, the statute of 1825, before quoted.

These provisions came on to be construed in *Howard* v. *Merriam*, 5 Cush. 563, and after a very thorough and able examination of the state of the law when the act was passed, and numerous decisions since, the court, *Shaw, C. J.*, decided, that the modes prescribed for the termination of tenancies at will by this act, by necessary implication excluded all other modes of determining the will by the act of the parties. The court distinguished, however, between the determination of the will by act of the parties, and by act of the law, holding that an entry by the landlord, a notice to quit, or other act by the landlord, for the direct purpose of determining the tenancy is to be reckoned among the acts of the party, and affected by this law; while the incidental termination of the tenancy by alienation or demise of the owner, or some act of the tenant hostile to the landlord's title, would be a termination of the estate by operation of law, and would not be affected by this act.

The court consider the state of the law at the time of the passage of this act as extremely doubtful, as to the mode of determining estates at will; especially after the decision of *Ellis* v. *Paige*, 1 Pick. 43, before cited, and the court says : "It seems to us, that the object (of this law) was not to show how this precarious relation of tenancy at will should be determined by act of law, but what should be done by either party to determine his will, and purposely to put an end to the tenancy, in pursuance of that determination."

As it was in Massachusetts, so it was in this State and elsewhere, in many respects, although the decision in *Ellis* v. *Paige*, must have increased the embarrassments before existing in that State, and to some extent in this State also. Similar doubts existed elsewhere, and especially as to strict tenancies at will, whether a notice to quit was necessary or not, and if it was, the length of the notice, and other conditions.

At common law it was settled that in case of a tenancy from year to year, six months notice, terminating at the end of the year, was necessary ; and in case of a letting for a month, then a month's notice ; and so for any aliquot part of a year, terminating at the end of such time in all cases. *Currier* v. *Perley*, 24 N. H. 224, and cases cited ; *Park-*

*er* v. *Constable*, 3 Wils. 25 ; Taylor Land. & Ten. sec. 478.

In the case of a strict tenancy at will, it was held in New York that a notice to quit was not necessary. *Jackson* v. *Bradt*, 2 Caines Rep. 169, per *Kent*, *J.* This is referred to by Chancellor Kent in 4th Com. sec. 114, and he there says "the later and more liberal rule seems to be, that tenants at will are regarded as holding from year to year, so far as to be entitled to notice to quit before they can be evicted by process of law." In *Jackson* v. *Miller*, 37 Conn. 747, it seems to be understood that notice is necessary ; the court saying that it is reasonable that notice be given in all cases where the tenant occupies with the permission of the landlord for an indefinite period, and does no act hostile to the landlord ; but it is held that the case of possession given on a contract for a sale is an exception.

In England the contrary doctrine was holden in *Right* v. *Beard*, 13 East. 210, where the defendant was put in possession on a contract of sale, and a demand of possession was required. So is *Newby* v. *Jackson*, 1 B. & C. 448. It appears, however, that in some cases, it is held that in strict tenancies at will a formal notice to quit is not required, but that it is enough to signify to the tenant that the will is determined, as in *Doe* v. *Price*, 9 Bingh. 356, where a letter to the tenant at will was held to be sufficient, which merely stated that "unless you pay what you owe me, I shall take immediate measures to recover possession of the property." In that case defendant had conveyed the property to pay, or secure a debt, and was allowed to retain possession. So coming on the land and expressly forewarning the tenant to occupy it no longer. Co. L. 55–6.

In *Coffin* v. *Lunt*, 2 Pick. 70, it was held to be a difficult question, whether a tenant at will was entitled to notice to quit ; there, the tenant occupied without any special agreement, though plaintiff had sued and recovered rent by the month. Court held that if notice was necessary, proof that plaintiff two months before the suit had asked the tenant to move out, was sufficient.

Without, however, citing all the cases upon this subject, it is enough to say that, previous to our statute of 1831, the law upon the subject of determining estates at will was in a state of most embarrassing uncertainty ; and especially was it so in respect to estates at will in the primary sense of the term. This is sufficiently obvious in the cases collected in the elaborate opinion of *Putnam*, *J.*, in note to *Coffin* v. *Lunt*, 2 Pick. 70. In the cases collected in *Howard* v. *Merriam*, 5 Cush. 563 ; 4 Kent's Com. sec. 111, *et seq.*; 1 Greenl. Cruise's Dig. Tit. 9, ch. 1, sec. 16, note 2 ; 1 Wash. on Real Prop. 370 ; Taylor's Land. & Ten. 305 to 317.

It was to remove these doubts and difficulties, that our law of 1831, which was copied mainly from the Massachusetts statute of 1825, was passed ; and we are of the opinion that by reasonable implication, its provisions for terminating estates at will by notice, are to be regarded as superseding and excluding all other modes by notice. To hold that the common law methods of determining such estates by notice to quit were still in force, and that the modes provided by this statute were

merely cumulative, notwithstanding some important changes were made in the length of the notice and otherwise, would be wholly inconsistent with the object of that statute, which was, doubtless, to relieve the subject from the very embarrassing uncertainty which surrounded it, and to furnish a plain and practicable method of determining tenancies at will.

The case of *Howard* v. *Merriam*, before cited, was determined upon great consideration. The statute of Massachusetts was, in substance, like our own, so far as this question is concerned, and the condition of the law in the two States where those statutes were passed, was much the same, and therefore the decision in that case is directly in point, and justly entitled to great respect.

By sec. 2 of ch. 209 of the Revised Statutes, the length of the notice in the various cases is prescribed. If there is a failure to pay the rent due and in arrear on demand, seven days notice will be sufficient. If the rent is payable more frequently than once in three months, whether the rent is due, or not due, thirty days notice shall be sufficient; and three months notice shall be sufficient in all cases, that is, all cases of tenancies at will or sufferance, which, by section first of that chapter, may be terminated by notice in writing to quit at a day named.

The three months notice applies to the cases not particularly specified, and must embrace those cases where the rent is payable once in three or more months, and also where there is a strict tenancy at will which rarely exists here, especially where rent is agreed to be paid.

In the case before us the plaintiff had a life estate in the land, with a remainder to the defendant and his heirs forever. The agreement offered in proof by the defendant was, that he should live on the farm, and carry it on, and that he and the plaintiff should constitute only one family during their lives, and that they would pay the debts due from the estate. From this evidence, a jury might be at liberty to find an agreement that defendant might occupy and carry on the farm during the plaintiff's life, she living in his family and the debts of the estate being paid from the farm. Of course, as this agreement was merely verbal, the plaintiff was not bound by it; but, as in the case of a verbal lease for two or more years, it must constitute a tenancy at will from year to year. If rent, as such, was reserved, and it was payable more frequently than once in three months, then thirty days notice would have been sufficient; but, we think, no such reservation of rent, within the meaning of the statute, could be inferred. The compensation for the use of the land cannot be regarded as periodical in any sense; in respect to the provision that the parties should live together constituting but one family, the duty is constant and continuing; and for the payment of the debts of the estate no time whatever is fixed.

Nor can this be considered as coming within the provisions of sec. 5 of the act in question, which makes every occupancy a tenancy at will, and the rent payable on demand, unless a different contract is shown, for here a different contract *is* shown, namely, a tenancy during the lives of the parties, which, although invalid because by parol, must operate to create a tenancy from year to year, the same as a parol lease for two or more years. The same objections to regarding such tenancies as strict

tenancies at will exist in both cases, namely, the injustice of dispossessing the tenant before the end of the year, when he has entered upon the faith of an agreement.

The effect given in our statute to the time of the payment of the rent, in determining the length of the notice to quit, accords with the doctrines of the courts at common law ; the time of payment being regarded as a leading circumstance in determining the duration of a tenancy which is otherwise uncertain ; therefore if an annual rent be reserved it will be held to be a tenancy from year to year, unless there be something to control it.   So if the party was let into possession under an agreement to pay a monthly rent, and nothing more stipulated as to duration, it would be regarded as a tenancy from month to month.   In all these cases the character of the demised premises, whether a farm or a dwelling house alone, would be taken into consideration in fixing the duration of the tenancy ; the idea of a tenancy at will from year to year having for its foundation the advancement of agriculture. 4 Kent's Com. secs. 113, 114.

The provision in our statute before cited, sec. 5, that a tenancy will be regarded as at will, and the rent payable on demand unless a different contract is shown, is held not to affect in any way the rules of evidence at common law, as to the nature of the tenancy, except by changing the burden of proof, and making it incumbent on the tenant to show a tenancy from time to time.   *Currier* v. *Perley,* 24 N. H. 225.

If a tenant was permitted to enter, upon an agreement to pay a reasonable rent, and no time was fixed for its payment, and there was nothing from which the duration of the tenancy could be inferred, it would be deemed to be a strict tenancy at will, and the rent payable on demand.   In such a case a question might be made as to the length of the notice to quit required by the statute, and it would seem to depend upon this, whether rent payable on demand is or is not to be deemed payable more frequently than once in three months.   Upon this point there may be difficulties that need the interpretation of the legislature, inasmuch as it is obvious that a rent payable on demand is not necessarily payable more frequently than once in three months.   What shall be the length of the notice in such case, whether three months or thirty days, we are not called upon to decide, for the case before us is not a strict tenancy at will as has already been shown.

It has been urged that the provisions in this statute regulating notices in such cases, apply only to the summary proceedings under that act ; but we think it must be considered as now settled, that it is not so restricted.   In *Currier* v. *Perley,* 24 N. H. 219, such a limited application was strenuously urged by counsel, but rejected by the court, holding, as it did, that there is nothing to confine its operation to proceedings under the act, or which shows an intention to prescribe a different time or manner of notice to quit, in the statute process, from that required in ordinary actions at law ; and the court, per *Bell, J.,* says : "We think the notices prescribed were designed by the statute to be substituted for those required at common law ;" and in this respect he accords fully with the doctrine of *Howard* v. *Merriam,* 5 Cush. 563, before cited.

The doctrine of *Currier* v. *Perley* is also reiterated in *Hazeltine* v. *Colburn*, 31 N. H. 472, where *Bell, J.*, in speaking of the changes in the notices effected by our statute, says, "these changes we regard as equally applicable, whether the question arises in an action at common law, or under the statute."

Indeed, any other view would greatly add to, instead of diminishing, the embarrassments before existing on this subject, inasmuch as no uniform rules for the termination of tenancies at will would any longer exist.

Upon these views, our opinion is, that a notice to quit was necessary in this case, and that, not being three months, it was defective and insufficient.

Another question has been suggested, and that is, whether the notice should not name the day when the tenant is required to quit, as would seem to be contemplated by the statute. Section first provides that the landlord may determine any lease at will or tenancy at sufferance, by a notice in writing to quit at a day therein named. This statute, as we have already seen, is to be regarded as superseding all other modes of terminating a tenancy by notice, and it would seem that the day should be named to comply with the statute; and so it is held in Massachusetts under a statute much like ours. *Currier & al.* v. *Barker*, 2 Gray 224. In *Hazeltine* v. *Colburn*, 31 N. H. 472, it is said that at common law it was indispensable that the time when the tenant was notified to quit should be the last day of his year, quarter, &c., and there is not the slightest ground in the statute to believe that the legislature could have intended to make a change by which the notice should not terminate on that day.

It is not necessary, however, in this case, to determine whether the day must be named in the notice, for upon other grounds we hold the notice to be insufficient, and the

*Exceptions are sustained.*